O. H. Ingram Company, Appellant, vs. Wisconsin Tax Commission, Respondent.

*April 29—October 14, 1930.*

For the appellant there were briefs by *Bundy, Beach & Holland* of Eau Claire, and oral argument by *P. M. Beach.*

For the respondent there was a brief by the *Attorney General* and *A. L. Hougen* of Manitowoc, special counsel, and oral argument by *Mr. Hougen.*

The following opinion was filed June 11, 1930:

OWEN, J.   On March 29, 1926, the Tax Commission caused an audit to be made by one of its auditors of the books of the plaintiff for the years 1916–1924, inclusive, which resulted in the imposition by the Tax Commission of an additional income tax upon the plaintiff for said years. A large portion of the assets of said O. H. Ingram Company consisted of stocks of other corporations, a number of which were lumber corporations, and from which the plaintiff received liquidating dividends during the years 1916 to 1924.   Upon the re-audit of March 29, 1926, it was determined that a number of these dividends had not been reported and were subject to an income tax.   In order to reach this determination it was necessary to value the stocks from which such liquidating dividends arose as of January 1, 1911.   This the Tax Commission did, following very closely the values at which such stocks were carried upon the books of the plaintiff as of January 1, 1911.   It is contended by the plaintiff that this valuation should be increased about thirty-six per cent.   The basis for this claim may be stated as follows: Cornelia Ingram, who owned 500 shares of stock in the O. H. Ingram Company, died in December, 1911.   In order to determine the amount of inheritance tax due from her estate it was necessary to appraise the value of such stock.   In determining its value the estate contended that the stock owned by the O. H. Ingram Company in the various other corporations should be valued at the amount at which it was carried on the books of the O. H. Ingram Company.   The total book value of such

stock was $1,464,367.02. In that proceeding the book value of the stocks as carried on the books of the O. H. Ingram Company was the only evidence offered of their value. After some investigation by the district attorney, and as the result of negotiations between him and the attorney for the Cornelia Ingram estate, it was finally stipulated that in order to determine the value of the 500 shares of stock in the O. H. Ingram Company the sum of $850,000 should be added to the book value of the corporate stocks owned by the Ingram Company. It is now contended that to determine the value of any particular stock owned by the Ingram Company on January 1, 1911, in this proceeding, the book value of such stock should be increased by about thirty-six per cent., being the percentage which the stipulated addition of $850,000 increased the total book value of such stocks on January 1, 1911.

In view of what we shall say later, it is not necessary to consider the conclusive effect in this proceeding of the finding made in the proceeding to determine the inheritance tax in the Cornelia Ingram estate. Suffice it to say that in that proceeding the basis for computing the tax was the value of the O. H. Ingram Company stock. In this proceeding, in order to determine the amount of liquidating dividends upon which the O. H. Ingram Company should pay an income tax, the fundamental inquiry is as to the value of the stock as of January 1, 1911, upon which such liquidating dividend is received. The inquiry presented here is quite different, and the weight that should be given here to the value placed upon the O. H. Ingram Company stock in 1911 for inheritance tax purposes is subject to many considerations and limitations.

The stipulation entered into in the inheritance tax proceeding indicates that the parties to that proceeding believed that the total amount at which those stocks, over sixty in number, were carried upon the books of the O. H. Ingram

Company, did not represent their total value within at least $850,000, but just how they reached that conclusion does not appear by the stipulation. The contention of appellant is that the only inference deducible from the stipulation must be that the entire list of stocks was carried upon the books of the company at thirty-six per cent. less than their real value. In that list were 4,000 shares of stock in the Weyerhaeuser Timber Company, carried upon the books of the company at $400,000. Evidence before the Tax Commission left no doubt that the value at which this stock was carried upon the books of the company was far below its true value, and it appears that $800,000 of the $850,000 which the stipulation added to the value of the list of stocks was attributable to this stock. What prompted the other $50,000 does not appear. However, there is sufficient evidence in the record to negative the conclusion that the $850,000 was intended as a blanket raise applicable to the entire list. Even though the determination made in the inheritance tax proceeding should under any circumstances foreclose the Tax Commission from making an independent investigation and determination of the value of these various stocks in this proceeding, such cannot be the result upon the record here presented, for the simple reason that there is no evidence that the county court, in which the inheritance tax was determined, uniformly ignored the book value of such stocks, or that it was the thought of any one connected with the proceeding that a blanket increase of thirty-six per cent. should be applied to the entire list of stocks.

In the present proceeding, therefore, it became the duty of the commission to determine for itself the value of the particular stock under investigation as of January 1, 1911. The record contains no evidence which will impeach such valuations. In fact, there is no evidence to establish different valuations, except that to be found in the record of the inheritance tax proceeding. The argument which appellant

makes, based upon that proceeding, is unsound, and the use sought to be made of it is illegitimate. This contention on the part of the appellant cannot be sustained.

Some years prior to January 1, 1911, the plaintiff became the owner of stock in the Louisiana Long Leaf Lumber Company, for which it paid $31,800, at which amount it was carried upon the books of the company and was so valued by the Tax Commission as of January 1, 1911. The Long Leaf Lumber Company owned stock in the Victoria, Fisher & Western Railway Company. On June 10, 1908, the Long Leaf Company declared a dividend payable to its stockholders in the stock of this railroad company. This dividend was not actually paid to the plaintiff company until 1915. In 1917 the Long Leaf Company purchased the property of the railroad company and paid to each stockholder of the railroad company a one hundred per cent. dividend, the plaintiff company receiving $19,280. It did not report this as income in its 1917 report. Upon the re-audit the Tax Commission determined that it was income received in the year 1917 and that it was subject to an income tax. Plaintiff objects to this tax on the ground that the stock was not valued as of January 1, 1911.

Plaintiff's original investment was in the stock of the lumber company. It never purchased any stock in the railroad company. This stock came to it as a result of its investment in the lumber company stock. The lumber company stock was the only item ever carried on the books of the company. As the taxpayer had never treated this stock as an item separate and distinct from its investment in the lumber company, neither did the Tax Commission. As the railroad stock was an incident of the lumber company stock, was an accrual to that stock, and as the railroad stock was not delivered to the plaintiff until 1915, and was never entered as a separate item on its books, it seems rather plain that the value of the railroad company stock was included in the value of the lumber company stock, and that it was

proper to treat the proceeds of the sale of that stock in 1917 as a liquidating dividend of the lumber company stock. We see no error in this respect.

In 1915 the plaintiff purchased 400 shares of the Phœnix Manufacturing Company stock at par, paying therefor $40,000. In 1922 the Phœnix Manufacturing Company was in financial distress, and on the 18th day of August, 1922, the stockholders by resolution agreed to surrender one half of their holdings to a committee, to be used in raising additional capital and securing business for the company. Pursuant to this action by the stockholders the plaintiff turned over one half of its stock to the committee, and in its income tax report for 1922 deducted $20,000 as a loss on what it termed a sale of this stock. It will be noticed that there was no sale of the stock. It was delivered in trust to a committee of the stockholders to be used for the protection of the remaining stock. It was nothing more than a trust arrangement, and the full beneficial title never passed from the plaintiff. As a matter of fact, the stockholders' committee turned this stock over to the American Engineering Company of Philadelphia in exchange for the right to manufacture a small patented stoker. The American Engineering Company then took charge of the concern and operated it until 1923, when it abandoned the project, returned the stock, and took back the manufacturing rights it had previously given. In 1923 the Phœnix Manufacturing Company went into the hands of a receiver, and in its income tax report of income received during 1923 plaintiff deducted as a loss the remaining $20,000 of its stock in the Phœnix Manufacturing Company. After it went into the hands of a receiver its bonds were foreclosed and the stockholders were asked to waive their redemption rights, which they refused to do, their refusal being evidenced by a resolution reciting that any secured creditors and stockholders were entitled to receive and apply upon their respective claims any excess of purchase price after the bonded in-

debtedness, interest thereon, and costs of foreclosure are paid, and a waiver of exemption would permit the bondholders to sacrifice the right of such unsecured creditors and stockholders. The Tax Commission disallowed the deduction in 1922 and 1923, but permitted a deduction of the entire amount of $40,000 in 1924 on the theory that in that year it was demonstrated that the stock was entirely worthless. We think the Tax Commission was right in holding that there was no sale of the stock in 1922, but that the transaction simply amounted to a plan for the reinvigoration of the company, and was an attempt to preserve the stockholders' investment in that company. Neither did the stockholders have a right to treat the entire amount of the remaining stock as a loss in 1923, at a time when they refused to waive their rights of redemption, for the reason that it would sacrifice their rights in the property of the corporation. The value of this stock continued to be speculative until the foreclosure sale, at which time its worthlessness was demonstrated, and we see no error in the commission's treatment of the transaction. In this connection it properly may be said that the stock of a corporation has potential value so long as the corporation itself has legal existence and a legal right to transact business. No one would say that either profit or loss results from fluctuations in the value of corporate stock. Its value may be low one year and high the next. Consequently, so long as a taxpayer owns stock in an existing corporation he is in no position to deduct as a loss for income tax purposes the depreciated value of such stock, in view of which there was no time prior to 1924 when the plaintiff was entitled to deduct as a loss from its income the value of this stock.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on October 14, 1930.