Wisconsin Electric Power Company, Respondent, vs. Department of Taxation, Appellant.

*September 8—November 18, 1947.*

352

For the appellant there were briefs by the *Attorney General* and *Harold H. Persons,* assistant attorney general, and oral argument by *Mr. Persons.*

For the respondent there were briefs by *Shaw, Muskat & Paulsen* of Milwaukee, and oral argument by *Martin R. Paulsen.*

RECTOR, J. The various items in dispute will be discussed in the order in which the circuit court findings are set forth.

1. The unamortized cost of grading and ballast.

The question involves the application of sec. 71.03 (3), Stats., which says:

"71.03 *Deductions from gross income of corporations.* Every corporation . . . shall be allowed to make from its gross income the following deductions : . . .

"(3) Losses actually sustained within the year and not compensated by insurance or otherwise. . . ."

The respondent contends on its motion to review that the ballast and grading have lost their original value through the abandonment of interurban service and scrapping of rails, ties, and bridges. It claims that they have no value as improvements and that therefore the cost unrecovered by depreciation allowances became a deductible loss at the time service was abandoned. In support of the argument cases are cited dealing with provisions under the federal tax law which permit reasonable allowances for obsolescence. *United States Cartridge Co. v. United States* (1932), 284 U. S. 511, 52 Sup. Ct. 243, 76 L. Ed. 431; *Gambrinus Brewery Co. v. Anderson* (1931), 282 U. S. 638, 51 Sup. Ct. 260, 75 L. Ed. 588. Obsolescence is diminution in value occasioned by changed conditions, etc., *United States Cartridge Co. v. United States, supra,* and may extend to an extinguishment of value. So long as there is something less than a total extinguishment deduction for obsolescence may be made for income-tax purposes only under statutory provisions for such allowances, *Wisconsin Box Co. v. Wisconsin Tax Comm.* (1929) 198 Wis. 439, 224 N. W. 483, and there are no such provisions applicable here. Where there is a total extinguishment established by an identifiable event accompanied by abandonment of the property, there is a loss within the meaning of sec. 71.03 (3), Stats. *Commissioner of Internal Revenue v. McCarthy* (7th Cir. 1942), 129 Fed. (2d) 84. But a loss claimed by reason of

diminution in value as distinguished from extinguishment of value must be established by sale. *Pugh v. Commissioner of Internal Revenue* (5th Cir. 1931), 49 Fed. (2d) 76; *Louisiana Land & Exp. Co. v. Commissioner of Internal Revenue* (5th Cir. 1947), 161 Fed. (2d) 842.

The rights of way upon which respondent's tracks were maintained, and of which the grading and ballast were a part, remain as rights of way for its electric-power lines. They admittedly have value and they have not been abandoned. There may have been a considerable diminution in value as a result of obsolescence, but there has been no identifiable event establishing the extent of the loss. *Cf. O. H. Ingram Co. v. Wis. Tax Comm.* (1930) 202 Wis. 202, 231 N. W 160. The deduction was properly disallowed.

2. The taxes of the old electric company paid by respondent after the merger.

The governing statute is sec. 71.03 (4), which reads:

"71.03 *Deductions from gross income of corporations.* Every corporation . . . shall be allowed to make from its gross income the following deductions: . . .
"(4) Taxes other than special improvement taxes paid during the year upon the business or property from which the income taxed is derived, including therein taxes imposed by the state of Wisconsin and the government of the United States as income, excess or war profits and capital stock taxes. . . ."

The deductions originally claimed consisted of state and federal income taxes and federal capital stock and social-security taxes paid in 1938 and 1939. Both the decision of the board of tax appeals and the opinion of the circuit court related to all such taxes. For some reason not clear to us, however, the circuit court judgment reversed the order of the board only so far as it disallowed federal taxes paid. This appeal therefore relates only to federal taxes paid.

Respondent concedes that so far as sec. 71.03 (4), Stats., is concerned, tax payments for which deductions may be taken must consist of payments of taxes imposed upon the taxpayer. *Falk Corp. v. Commissioner of Internal Revenue* (7th Cir. 1932), 60 Fed. (2d) 204. But it argues that the operation of sec. 196.80 (1) (c) continued the old electric company in the respondent so that in substance the respondent discharged its own obligation when it paid the tax. And it contends that, in any event, the statute conferred upon it the privileges of the old electric company, which necessarily include the privilege of deducting the tax.

The problem involves an analysis of corporate merger as governed by sec. 196.80 (1) (c), Stats.[1] There can of course be no merger of corporations in the absence of legisla-

---

[1] 196.80 *Consolidation of utilities; street and interurban railways.* (1) With the consent and approval of the [public service] commission but not otherwise: . . .

(c) Any public utility or any public utility owning or operating a street railway or interurban railway owning all the stock of any other public utility or any other public utility owning or operating a street railway or interurban railway line may file in the office of the secretary of state a certificate of such ownership, in its name and under its corporate seal, signed by its president or a vice-president and its secretary or treasurer, and setting forth a copy of the resolution of its board of directors to merge such other corporation and to assume all of its obligations, and the date of the adoption of such resolution. Thereupon all of the estate, property rights, privileges and franchises of such other corporation shall vest in and be held and enjoyed by such possessor corporation as fully and entirely and without change or diminution as the same were before held and enjoyed by such other corporation, and be managed and controlled by such possessor corporation, but subject to all liabilities and obligations of such other corporation and the rights of all creditors thereof. The possessor corporation shall be deemed to have assumed all the liabilities and obligations of the merged corporation, and shall be liable in the same manner as if it had itself incurred such liabilities and obligations. The possessor corporation may relinquish its corporate name and assume in place thereof the name of the merged corporation by including a provision to that effect in the resolution of merger adopted by the board of directors and set forth in the certificate of ownership and upon the filing of such certificate the change of name shall be complete.

tive authority. *St. Thomas Gemeinde v. St. Matthews Church* (1926), 191 Wis. 340, 210 N. W. 942. In sec. 196.80 (1) (c) the legislature has specified the procedure pursuant to which a merger is effectuated and has detailed its incidents. Upon the adoption of the required resolution by the utility corporation owning the stock of the corporation to be merged, the "possessor corporation" succeeds to "all of the estate, property rights, privileges and franchises of such other corporation . . . without change or diminution . . . but subject to all liabilities and obligations of such other corporation. . . ." It "shall be deemed to have assumed all the liabilities and obligations of the merged corporation, and shall be liable in the same manner as if it had itself incurred such liabilities and obligations." The transfer of assets and liabilities incident to a merger is effectuated by the statute. Corporate action other than adoption of the required resolution is superfluous and ineffectual. *United States v. Seattle Bank* (1944), 321 U. S. 583, 64 Sup. Ct. 713, 88 L. Ed. 944.

A merger or consolidation statute may expressly provide that all constituent corporations shall be continued in the surviving corporation. *United States v. Seattle Bank, supra.* However, there is no such provision in sec. 196.80 (1) (c), Stats. The merged corporation is divested of its estate, property rights, privileges, and franchises. It is "without property with which to do business, and without the right lawfully to do business, [and] is dissolved by the operation of the law which brings this condition into existence." *Rochester R. Co. v. Rochester* (1907), 205 U. S. 236, 256, 27 Sup. Ct. 469, 51 L. Ed. 784. There is considerable authority in recent federal cases to the effect that even in the absence of statutory provision a merged corporation is continued in the surviving corporation for tax exemption and deduction purposes,[1] but it

---

[1] *Helvering v. Metro. Edison Co.* (1939) 306 U. S. 522, 59 Sup. Ct. 634, 83 L. Ed. 957; *American Gas & Elec. Co. v. Commissioner of Internal Revenue* (2d Cir. 1936), 85 Fed. (2d) 527; *American Gas*

is contrary to earlier and, in our opinion, better reasoned authority such as *Rochester R. Co. v. Rochester, supra.*

It is true that under sec. 196.80 (1) (c), Stats., the surviving corporation succeeds to the liabilities and obligations of the merged corporation to the same extent as though it had incurred them in the first instance, but such a circumstance does not constitute the survivor as the corporation incurring the liabilities. Respondent, the surviving corporation, did not incur or pay them as taxes upon its business. It paid them as obligations of the old electric company, to which it succeeded.

There is a contention that since the federal decisions establish the continuity of a merged corporation in the survivor for federal income-tax purposes, we are bound to permit deduction of the federal taxes under our law as respondent's taxes and not as the old electric company's taxes paid by respondent. The deduction is dependent upon the construction of Wisconsin statutes. That is a matter for final determination by this court, and we are in no sense bound by federal construction of federal tax laws or by federal construction of state laws for federal income-tax purposes.

We cannot agree that the deduction privilege granted by sec. 71.03 (4), Stats., passed to the respondent by virtue of the statutory language transferring to it "the estate, property rights, privileges and franchises" of the old electric company. It would require a specific and unambiguous provision to accomplish that result. *Comet Co. v. Department of Taxation* (1943), 243 Wis. 117, 9 N. W. (2d) 620. A general grant of privileges is insufficient to transfer such a statutory exemption. *Rochester R. Co. v. Rochester, supra.* The circuit court erred in allowing the deduction.

& Electric Co. v. United States (1936), 17 Fed. Supp. 151; *New York Cent. R. Co. v. Commissioner of Internal Revenue* (2d Cir. 1935), 79 Fed. (2d) 247; *Western Maryland R. Co. v. Commissioner of Internal Revenue* (4th Cir. 1929), 33 Fed. (2d) 695.

3. Interest paid on the old bonds from October 28 to December 1, 1938.

The applicable statute is sec. 71.03 (2) :

"71.03 *Deductions from gross income of corporations.* Every corporation . . . shall be allowed to make from its gross income the following deductions : . . .

"(2) Other ordinary and necessary expenses and cash bonuses to employees, actually paid within the year out of the income in the maintenance and operation of its business and property, . . . and including also interest paid during the year in the operation of the business from which its income is derived. . . ."

For purposes of corporate bookkeeping the respondent regarded the payment of interest on the old bonds as an expense of issuing the new ones and amortized it over the life of the new issue, although it claimed the entire amount paid as a deduction in its 1938 income-tax return. Both the board of tax appeals and the circuit court held that the interest, being a necessary incident to the refinancing of the old issue, was in the same category as payment of commissions or allowance of discount, and that it should be amortized over the life of the new issue. The deduction of the interest under the provision above set out was denied upon the ground that it did not represent an ordinary and necessary expense. It was said to be quite extraordinary.

The view of the board and the trial court is premised upon the assumption that sec. 71.03 (2), Stats., limits deductible interest payments to ordinary interest payments. We do not so interpret it. The general subject of exemption is "ordinary and necessary expenses." There seems to have been some doubt as to whether interest would qualify as such an expense. At any rate, ordinary and necessary expenses, by specific definition, include "interest paid during the year in the operation of the business from which its income is derived." The only permissible inquiry is whether interest is paid in the

operation of the business, and there can be no doubt that it was in this case. It is not the business of respondent to borrow capital, but if capital is needed in the operation of its business, interest payments necessary in acquiring it are made in the operation of the business. The retired loans were made and the moneys used for the purposes of business operations, and the interest from October 28 to December 1, 1938, was incidental to retirement of the loans prior to maturity. The deduction should have been allowed.

4. The unamortized bond discount and expense of the old electric company.

The applicable statute is sec. 71.03 (3), the relevant portions of which are set out at page 353, *ante*.

The old electric company incurred certain expense properly chargeable to its bond issue of $7,500,000 which was retired by respondent with the proceeds of its issue of October 28, 1938. The expense was being amortized by the old company over the life of the old issue. Had it called and paid its bonds, the unamortized expense could properly have been regarded as a deductible loss. However, we are unable to agree with the circuit court that respondent is entitled to the deduction. We have already determined that the old electric company is not continued in the person of the respondent nor, in view of what we have said with respect to transference of statutory deductions from the old corporation to the new, do we think the merger statute contains language sufficient to effectuate such a transfer.

Respondent argues that the claimed deduction includes the discount at which the redeemed bonds were originally sold and that the loss was not sustained until it redeemed them. If this analysis were accepted, the respondent's position would not be improved because it did not issue the bonds in the first instance and the difference between the original sale price and the redemption price was not its loss. The question comes

back to whether the old company is continued in the respondent, and we have said that it is not. The circuit court should not have allowed the deduction.

5. The assessment of a taxable gain to respondent.

The circuit court held that the merger, viewed in the light of the events leading up to it, was simply a means pursuant to which the respondent acquired from North American Edison Company the property of the old electric company in exchange for respondent's preferred stock. Thus, the court held that the exchange was tax free under sec. 71.02 (2) (i) 3, Stats., which reads:

"(3) No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock received by each is substantially in proportion to his interest in the property prior to the exchange."

We agree with the result reached by the circuit court, but we do not agree with its reasoning. Each step in the acquisition by respondent of the old electric company's property must be analyzed in order to determine whether a taxable incident occurred. These intervening steps may not be disregarded. *Cudahy v. Tax Comm.* (1937) 226 Wis. 317, 276 N. W. 748. Applying this test we are unable to find a taxable incident. The incident relied upon by the appellant is a claimed liquidation of the old electric company which is said to result in a tax under sec. 71.02 (2) (b) 3, Stats.[1] Thus, the question is

---

[1] 71.02 (2) (b) 3. Amounts distributed in liquidation of a corporation shall be treated as payment in exchange for the stock, and the gain or loss to the distributee resulting from such exchange shall be determined under the provisions of this paragraph and section 71.02 (2) (d). No amounts received in liquidation shall be taxed as a gain until the distributee shall have received amounts in liquidation in excess of his cost or other income tax basis provided in sec-

whether merger under sec. 196.80 (1) (c) results in a liquidation of the merged corporation.

There was no liquidation in the usual sense, consisting of the payment of creditors and a distribution of remaining assets to stockholders. The claim of a liquidation must therefore rest upon the language of sec. 71.02 (2) (b) 3, Stats., extending it to a disposition by a corporation of assets with which it has carried on business and distribution of the assets or their proceeds. But there was no disposition by the old electric company of its assets, nor did it distribute the assets or their value to its stockholder. As we pointed out on page 356, *ante,* its assets descended to the respondent by operation of law as a result of corporate action by respondent and permission of the public service commission.

*By the Court.*—On the appeal of the Department of Taxation:

1. The judgment is reversed so far as it allows a deduction for federal taxes paid by respondent in discharge of the tax liabilities of the old electric company and reverses the order of the board of tax appeals disallowing the deduction.

2. The judgment is reversed so far as it allows a deduction for the unamortized bond discount and expense of the $7,500,000 bond issue of the old electric company and reverses the order of the board of tax appeals disallowing the deduction.

---

tion 71.02 (2) (d), and any such excess shall be taxed as gain in the year in which received. Losses upon liquidation shall be recognized only in the year in which the corporation shall have made its final distribution. For the purposes of this paragraph a corporation shall be considered to be liquidating when it begins to dispose of the assets with which it carried on the business for which it was organized and begins to distribute the proceeds from the disposition of such assets, or the assets themselves, whether or not such disposition and distribution is made pursuant to resolution for dissolution; provided, that any distribution of current earnings of a corporation shall not be considered to be a distribution in liquidation unless the corporation making such distribution has ceased or is about to cease carrying on the business for which it was organized.

3. The judgment is affirmed so far as it disallows the additional assessment of taxes based upon the finding by the Department of Taxation that the merger resulted in a taxable gain and reverses the order of the board of tax appeals confirming the additional assessment.

On the respondent's motion to review :

1. The judgment is affirmed so far as it reverses the order of the board of tax appeals allowing as a deduction the unamortized cost of grading and ballast on the rights of way from which respondent's interurban tracks have been removed.

2. The judgment is reversed so far as it affirms the order of the board of tax appeals disallowing as a deduction the interest on the bond issues retired as of December 1, 1938.

The cause is remanded with directions to enter judgment in accordance herewith.    No costs.

BARLOW, J., took no part.