FREDRICKS and others, Appellants, vs. INDUSTRIAL COMMISSION and another, Respondents.*

*June 2—June 26, 1958.*

* Motion for rehearing denied, with $25 costs, on October 7, 1958.

520

For the appellants there was a brief by *Max Raskin* of Milwaukee, attorney, and *David Rabinovitz* of Sheboygan, and *Philip L. Padden* of Milwaukee, of counsel, and oral argument by *Mr. Raskin.*

For the respondent Industrial Commission there was a brief and oral argument by *Arnold J. Spencer* of Madison.

For the respondent Kohler Company there was a brief by *Lyman C. Conger* and *Edward J. Hammer,* both of Kohler, and oral argument by *Mr. Conger.*

HALLOWS, J.   The question is: Are employees engaged in a strike or *bona fide* labor dispute entitled to unemployment compensation benefits if they are discharged by their employer during the course of the strike and they apply for benefits within fifty-two weeks of the date of discharge but more than fifty-two weeks after the date of the close of the most-recent week in which they performed wage-earning services for the employer?

The answer necessitates an interpretation of sec. 108.06 (3) (a), Stats. 1953, and a determination of whether the operation of this section is tolled or held in abeyance because of the existence of a strike. Sec. 108.06 (3) (a) relates to

the benefit liability of employer's account and the duration of such liability. This section reads:

"In no case shall the fund remain or be liable to pay benefits to an employee, based on his employment by a given employer, for any unemployment occurring more than fifty-two weeks after the close of the employee's most-recent week of employment by such employer."

A "week of employment" for the purpose of this section is a week within which an employee has performed any wage-earning services for his employer. This is a plain meaning of the definition of "weeks of employment" contained in sec. 108.02 (13), Stats. 1953, which provides:

"An employee's 'weeks of employment' by an employer means all those weeks within each of which the employee has performed any wage-earning services for the employer in employment subject to this chapter."

We are required to adopt this definition of "week of employment" because the Unemployment Compensation Act provides its own rule of interpretation in sec. 108.02 (21), Stats. 1953. We concluded that, where a word or phrase such as "weeks of employment" is specifically defined in the statute, its meaning is as defined in the statute and no other rule of statutory construction is applicable. It is only when a word or phrase is used in the Unemployment Compensation Act and is not specifically defined therein that common and approved usage of such word or phrase and other accepted rules of statutory construction apply. See *Maloney v. Industrial Comm.* (1943), 242 Wis. 165, 173, 7 N. W. (2d) 580, 9 N. W. (2d) 623; *Ernst v. Industrial Comm.* (1944), 246 Wis. 205, 207, 16 N. W. (2d) 867; *International Union v. Industrial Comm.* (1946), 248 Wis. 364, 21 N. W. (2d) 711.

Since a "week of employment" is defined in terms of performance of wage-earning services, and an employee out on

strike is not performing any wage-earning services for his employer, we must confine ourselves to the definition contained in the act and we cannot apply any general rules of law to determine what is a week of employment.

The word "employment" is also defined in terms of services performed by an individual for pay. (Sec. 108.02 (5), Stats. 1953.)

The Wisconsin Unemployment Compensation Law was enacted on January 29, 1932 (ch. 20, Laws of Sp. Sess. 1931–1932), and was the first State Unemployment Compensation Law adopted in the United States.

Sec. 108.06 (3) (a), Stats., has during the whole history of the act contained the language or its equivalent that "in no case shall the fund remain or be liable to pay benefits to an employee." This section determines the duration of the employer's liability and is an express limitation on that liability operating to completely bar any claim asserted against the fund for unemployment occurring after the expiration of fifty-two weeks from the close of the employee's last week of wage-earning services for the employer.

The appellants advanced two arguments why they are eligible for benefits: (1) The word "employment" in sec. 108.06 (3) (a), Stats., means employment status and not performing wage-earning services; and (2) assuming "week of employment" means any week in which the employee has performed wage-earning services, the section was suspended during the strike as to these plaintiffs until the date of their discharge. It is an established principle of law that a "strike" is a cessation of work on the part of the strikers and does not terminate completely the employer-employee relationship, which relationship or status continues for *some* purposes. *Iron Molders' Union v. Allis-Chalmers Co.* (7th Cir. 1908), 166 Fed. 45, 20 L. R. A. (N. S.) 315; *Fryns v. Fair Lawn Fur Dressing Co.* (1933), 114 N. J. Eq. 462, 168 Atl. 862; *Jeffery-De Witt Insulator Co. v. National L. R. Board*

(4th Cir. 1937), 91 Fed. (2d) 134, 112 A. L. R. 948; *Michaelson v. United States* (7th Cir. 1923), 291 Fed. 940; *Gentile v. Director of Division of Employment Security* (1952), 329 Mass. 500, 109 N. E. (2d) 140.

In *Marathon Electric Mfg. Corp. v. Industrial Comm.* (1955), 269 Wis. 394, 69 N. W. (2d) 573, we said in deciding the applicability of the phrase " 'left (or partially or totally lost) his employment with an employer because of a strike or other *bona fide* labor dispute' " in sec. 108.04 (10), Stats., that the legislature did not mean a complete termination of the relationship of employer-employee, but rather one in which no work was performed by the employee for the employer. We held that section did not deny benefits to those employees whose employer-employee relationship was completely terminated by discharge while they were on strike. Such employees lost their employment, as the word was used in that section, because of their discharge and not because of the strike. There was no question raised or considered of the applicability of sec. 108.06 (3). The language of that case was expressly confined to sec. 108.04 (10). The case determining the eligibility status for unemployment benefits of an employee discharged during the strike is not authority for determining the limitation of the benefit liability of the employer's account under sec. 108.06 or for substituting employment status which existed for some purposes during the strike for wage-earning services performed by the employee in the context of sec. 108.06 (3) (a). For the reasons heretofore given the construction of sec. 108.06 (3) (a) is controlled by sec. 108.02 (13).

The appellant's second argument that sec. 108.06 (3) (a), Stats., is suspended or tolled during a strike is based on the explanatory language in the *Marathon Case* which was confined to sec. 108.04 (10). The language used was to the effect that as to strikers there was a complete suspension of benefits during the strike under that section and one of the

purposes of that section was to preserve the *status quo* during the course of the labor dispute so that at its cessation the parties thereto stand in the same relation to each other as at its beginning in so far as payment of benefits under the act is concerned. Perhaps the appellant was misled by this language which was used in reference to an employee's ineligibility for benefits under and in construing sec. 108.04 (10) in keeping with the legislative policy underlying its enactment to protect employers against having to finance a strike against themselves. The language was not used in reference to sec. 108.06 (3) (a) providing a time limit on the liability of the employer's fund to pay benefits. Because of the words "suspension of benefits" and *"status quo,"* the appellant argues such language should toll the operation of sec. 108.06 (3) (a) during a strike or *bona fide* labor dispute. Neither the language nor the holding in the *Marathon Case* can be applied to suspend the operation of sec. 108.06 (3) (a). Nor can we find in the language of the act any basis for the suspension or tolling of sec. 108.06 (3) (a) during a strike. To adopt the appellants' argument would be the equivalent of this court invading the legislative field and would amount to legislation by judicial decree. This we cannot do. *Montello Granite Co. v. Industrial Comm.* (1928), 197 Wis. 428, 222 N. W. 315. The effect of sec. 108.04 (10) is to deny eligibility for benefits to striking employees until their employment status is completely terminated. Such section or its effect does not toll the time limit on the liability to pay benefits under sec. 108.06 (3) (a) which is unaffected by a strike.

The appellants' argument points out reasons of policy within the province of the legislature to consider. It is true that if a strike lasts fifty-two weeks the employer's fund is no longer liable for the payment of unemployment benefits. In this sense the payments are not suspended during a strike but are denied *pro tanto* week by week until completely de-

nied by the limitation of sec. 108.06 (3) (a), Stats. Likewise this section is not in *status quo* or any part of a status of neutrality. As was pointed out in *Montello Granite Co. v. Industrial Comm., supra,* in the enactment of legislation designed to cover a vast field of social legislation, it is impossible to anticipate and provide for all situations which might arise. Apparently no one thought when the Unemployment Compensation Law was enacted during the depression that a labor strike would last for several years. Relief from the situation created by sec. 108.04 (10) and sec. 108.06 (3) (a) should be sought from the legislature but until the legislature changes the law it is our duty to construe the law as we find it.

*By the Court.*—Judgment affirmed.