SALERNO, Respondent, v. JOHN OSTER MANUFACTURING COMPANY, Defendant: INDUSTRIAL COMMISSION, Appellant.

*November 28—December 29, 1967.*

434

436

For the appellant Industrial Commission there was a brief and oral argument by *Arnold J. Spencer,* chief counsel of the unemployment compensation division.

For the respondent there was a brief by *Zubrensky, Padden, Graf & Bratt* of Milwaukee, and oral argument by *Herbert S. Bratt.*

WILKIE, J. The sole issue raised on this appeal is whether the employee had sufficient "weeks of employment" to qualify for unemployment benefits.

The right of an unemployed person to receive unemployment compensation benefits is wholly dependent on the fulfillment of the statutory prerequisite embodied in ch. 108 of the statutes.

When an unemployed person applies for benefits under ch. 108 an initial mathematical computation must be made to determine whether the person has accumulated the requisite number of "weeks of employment" during his statutory base period prescribed by sec. 108.04 (4), Stats. That section details various qualifying conditions

which must be met before an unemployed person is entitled to benefits. A minimum of fourteen "weeks of employment" during a base period is one of the conditions.

"Weeks of employment" are defined in sec. 108.02 (13), Stats. 1963, as follows:

"An employe's 'weeks of employment' by an employer means all those weeks within each of which the employe has performed any *wage-earning services* for the employer in employment subject to this chapter." (Emphasis added.)

In *Fredricks v. Industrial Comm.*[1] this court concluded that the plain meaning of the definition of a "week of employment" contained in sec. 108.02 (13), Stats., was "a week within which an employee has performed any wage-earning services for his employer."[2]

*Fredricks* explained that it was incumbent upon the court to adopt the statutory definition of "weeks of employment" because the Unemployment Compensation Act provides its own rule of interpretation in sec. 108.02 (21), Stats. 1953, providing:

"UNDEFINED TERMS. Any word or phrase used in this chapter and not specifically defined herein shall be interpreted in accordance with the common and approved usage thereof and in accordance with other accepted rules of statutory construction. No legislative enactment shall control the meaning or interpretation of any such word or phrase, unless such enactment specifically refers to this chapter or is specifically referred to in this chapter."

It is undisputed that the employee in the instant case had only four actual weeks of wage-earning service within her base period. Despite this concession, the employee argues that the period for which she received

[1] (1958), 4 Wis. 2d 519, 91 N. W. 2d 93.
[2] *Id.* at page 522.

back pay should constitute "weeks of employment" even though a literal definition of sec. 108.02 (13), Stats., precludes such an interpretation.

But *Fredricks* is authority for the proposition that the statutory definition of "weeks of employment" must be literally adhered to even if the result will work injustices in isolated cases. *Fredricks* involved a claim for unemployment compensation benefits interposed by discharged employees of the Kohler Company. The employees had been engaged in a prolonged strike and had not performed any wage-earning services for the employer during their base periods. The court held that the length of the strike did not suspend or toll the duration of the employer's liability to pay benefits under the Unemployment Compensation Law, and consequently the employees did not have sufficient "weeks of employment" within the ambit of sec. 108.02 (13), Stats., to qualify for benefits. The court concluded that the employees' contentions raised "reasons of policy within the province of the legislature to consider." [3]

In the instant case, the employee has not qualified for benefits solely because she has been prevented from working as a result of her employer's unfair labor practice. It is undisputed that back pay received during a discharge is the equivalent of wages for benefit purposes [4] and that consequently the recipient of the back pay would be ineligible for unemployment compensation. It does not follow, however, that merely because back pay constitutes wages an employee is performing wage-earning services for an employer during the period in which he receives his back pay.

The facts in the instant case are readily distinguishable from those which were present in the *Fredricks* case. Here, the fault of the employer prevented the

---

[3] *Fredricks v. Industrial Comm.*, *supra*, footnote 1, at page 525.
[4] Sec. 108.05 (6), Stats.

acquisition of "weeks of employment." No employer fault was present in *Fredricks*. However, the literal interpretation of sec. 108.02 (13), Stats., as explained in *Fredricks*, is not limited to circumstances where no employer fault is found as the reason why no wage-earning services are performed.

In reversing the Industrial Commission, the circuit court relied on *Wisconsin Granite Co. v. Industrial Comm.*[5] That case involved a claim for workmen's compensation by the widow of a deceased employee. The employee had contracted pneumoconiosis while working for the Wisconsin Granite Company. However, the disease was not identified until after the plant had shut down for repairs and the employee was not actually working. The applicable statute allowed an employee to recover workmen's compensation if the employee was "performing service growing out of and incidental to his employment," [6] at the time of the accident.

The court in *Wisconsin Granite* held that the statute could not be literally applied to occupational disease cases (as opposed to accident cases) because this would be "utterly repugnant to the manifest purpose of the legislature." [7] By applying principles of statutory construction, the court found that the legislature did not intend to close the door on otherwise compensable occupational diseases merely because a literal interpretation of the statute compelled such foreclosure.

*Wisconsin Granite* involved two "obviously repugnant" [8] provisions in the same basic law, *i.e.*, the Workmen's Compensation Act.[9] Statutory construction was

[5] (1932), 208 Wis. 270, 242 N. W. 191.

[6] Sec. 102.03 (2), Stats. 1927.

[7] *Supra*, footnote 5, at page 274.

[8] *Id.*

[9] The one, sec. 102.35, Stats. 1929, extended the provisions of the act so as "to include, in addition to accidental injuries, all other injuries, including occupational diseases, growing out of and inci-

required to give effect to sec. 102.35, Stats. 1929. The statutory definition involved in the instant case (and in *Fredricks*) does not allow the court to indulge in statutory construction.

It is undoubtedly true that one of the ultimate objectives of the Unemployment Compensation Act is, as eloquently stated by the trial court, to "cushion the cruel blow of unemployment resulting through no fault of the employee." However, the public policy declarations of the act may not be used to supersede, alter or modify its specific provisions.[10]

The statutory definition of "weeks of employment" in sec. 108.02 (13), Stats., has not been amended by the legislature since the court's decision in *Fredricks* over nine years ago. In situations such as this, the court's interpretation of a statute becomes a part thereof, unless the legislature subsequently amends the statute to effect a change.[11]

It is inequitable that, as here, an employee may lose her eligibility for unemployment compensation benefits where she is unable to gain sufficient weeks of service because of the fact that she is out of work due to her employer's unfair labor practice in discharging her. Yet that is the result of the plain meaning of sec. 108.02 (13), Stats., and it is for the legislature and not this court to alter the definition.

In this connection we note that the 1967 legislature evinced concern for employees who are caught in predicaments similar to that of Mrs. Salerno, by the intro-

dental to the employment." The other, sec. 102.03 (2), required as a condition of liability that "at the time of the accident the employee is performing service growing out of and incidental to his employment."

[10] Sec. 108.01, Stats.

[11] *Sun Prairie v. Public Service Comm.*, ante, p. 96, 154 N. W. 2d 360, and cases cited therein.

duction and consideration [12] of Senate Bill 222, which bill was introduced upon request of the advisory committee on unemployment compensation. Sec. 5 of the bill would have amended sec. 108.04 (4) (a), Stats., by lengthening the base period for back pay recipients. Though this bill would not have changed the statutory definition of "weeks of employment," its effect would have allowed a person who had received back pay subsequent to weeks of wage-earning services to claim those weeks despite the fact that his normal base period had expired.

The employee also contends that the WERB reinstatement order, under the provisions of sec. 111.17, Stats. 1963, is paramount and controlling over the provisions of the Unemployment Compensation Act, and if not controlling, that comity between sister agencies compels the Industrial Commission to effectuate the WERB's order by holding that the order created statutory "weeks of employment."

Sec. 111.17, Stats., provides:

"**Conflict of provisions; effect.** Wherever the application of the provisions of other statutes or laws conflict with the application of the provisions of this subchapter, [*i.e.,* the Employment Peace Act] this subchapter shall prevail, provided that in any situation where the provisions of this subchapter cannot be validly enforced the provisions of such other statutes or laws shall apply."

There is a possible conflict between the provisions of sec. 111.17 and those of ch. 108, Stats. But sec. 108.02 (21) was enacted as part of ch. 186, Session Laws of 1939, on June 24, 1939, which enactment was later than that of sec. 111.17, which was adopted as

---

[12] Passed by the Senate on November 8, 1967; on December 16, 1967, the Assembly regrettably failed to muster a two-thirds vote to consider the bill (voting 58 to 39 to suspend the rules and take up the bill).

part of the Employment Peace Act (ch. 57, Session Laws of 1939, enacted May 2, 1939). (Sec. 111.17 (then sec. 111.18) was initially adopted as part of ch. 51, Session Laws of 1937, enacted April 14, 1937.) Neither sec. 111.17, as enacted, nor sec. 108.02 (21) refer specifically to the other. There is nothing in the adoption of the Employment Peace Act in 1939 that shows a legislative intent that the provisions of sec. 111.17 are to override those of ch. 108 and specifically sec. 108.02 (21). The later enactment, ch. 186 of the Session Laws of 1939, prevails and the WERB order in the instant case does not control the disposition of the unemployment compensation claim.

*By the Court.*—Judgment reversed.