Wisconsin DEPARTMENT OF REVENUE, Plaintiff-
Respondent,

v.

UNITED STATES SHOE CORPORATION,
Defendant-Appellant.†

UNITED STATES SHOE CORPORATION, Plaintiff-
Appellant,†

v.

Wisconsin DEPARTMENT OF REVENUE,
Defendant-Respondent.

Court of Appeals

*No. 89-0682. Oral argument December 14, 1989.—Decided
September 6, 1990.*

(Also reported in 462 N.W.2d 233.)

†Petition to review denied.

For the appellant the cause was submitted on the briefs of *Leonard S. Sosnowski* of *Foley & Lardner* of Madison and *Larry McMillin* of *Frost & Jacobs* of Cincinnati, Ohio, and oral argument by *Larry McMillin.*

For the respondent the cause was submitted on the brief of *Donald J. Hanaway,* attorney general, and *Edward S. Marion,* assistant attorney general, and oral argument by *Edward S. Marion.*

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

SUNDBY, J.   In this appeal, we decide that United States Shoe Corporation, under sec. 71.06(1), Stats. (1975),[1] may not offset the net business losses sustained by corporations with which it merged against its 1976 and 1977 Wisconsin net business income. We also decide

---

[1]Section 71.06(1), Stats. (1975), provides in part:

> For calendar or fiscal years ending on or after July 31, 1976, a corporation may offset against its Wisconsin net business income any Wisconsin net business loss sustained in any of the next 5 preceding income years to the extent not offset by other items of Wisconsin income in the loss year and by Wisconsin net business income of any year between the loss year and the income year for which an offset is claimed. For purposes of this section Wisconsin net business income or loss shall consist of all the income attributable to the operation of a trade or business in this state, less the business expenses allowed as deductions under s. 71.04.

that the circuit court correctly concluded that a closing agreement between the Department of Revenue and U.S. Shoe, to compromise the taxpayer's franchise tax liability under a June 19, 1984 additional assessment, did not settle U.S. Shoe's franchise tax liability for fiscal years 1976 and 1977. We therefore affirm the circuit court's order.

## BACKGROUND

U.S. Shoe is an Ohio corporation engaged in the manufacture and sale of shoes in Wisconsin and elsewhere. In 1966 it acquired the Freeman-Toor Corporation, a Delaware corporation engaged in the manufacture of men's shoes. Freeman-Toor (Del.) organized subsidiary corporations to own and operate each retail sales outlet. On July 31, 1974, Freeman-Toor (Del.) and its subsidiary corporations were merged into Freeman-Toor (Ohio). Sixteen of the retail subsidiaries had net operating losses for fiscal years 1971 through 1974. On July 31, 1975, Freeman-Toor (Ohio) was merged into U.S. Shoe. During fiscal year August 1, 1974 through July 31, 1975, Freeman-Toor (Ohio) had a Wisconsin net loss for franchise tax purposes.

On its 1976 Wisconsin franchise tax return, U.S. Shoe offset against its income the loss reported by Freeman-Toor (Ohio) on its 1975 Wisconsin return. The loss offset included the losses incurred by the retail subsidiaries of Freeman-Toor (Del.). Because not all of the loss was used in fiscal year 1976, U.S. Shoe carried over and offset the excess against its 1977 income.

The department disallowed the claimed offsets and, on March 7, 1980, notified U.S. Shoe of an additional franchise tax assessment for tax years 1976 and 1977. The department claimed that sec. 71.06(1), Stats. (1975),

126

did not permit a corporation to offset against its current income the losses of corporations merged into it. The tax appeals commission reversed.

On June 19, 1984, the department issued to U.S. Shoe a further notice of additional franchise tax assessment for fiscal years 1978–83. The claim was compromised and on December 21, 1984, U.S. Shoe and the department entered into a closing agreement. U.S. Shoe argued that the 1984 closing agreement foreclosed the department from assessing any further franchise taxes against it for any period before January 31, 1983, including the period covered by the March 7, 1980 additional assessment. The tax appeals commission agreed with U.S. Shoe as to fiscal year 1978 and granted it summary judgment barring the additional assessment for that year. The commission granted the department summary judgment determining that the closing agreement did not bar the department's additional franchise tax assessment for the 1975 through 1977 fiscal years.

The circuit court affirmed the commission's disposition of the summary judgment motions but reversed the commission's decision and order as to U.S. Shoe's franchise tax liability for fiscal years 1976 and 1977 and reinstated the department's March 7, 1980, additional assessment.

I.

THE CLOSING AGREEMENT ISSUE

The closing agreement is entitled "IN THE MATTER OF THE ADDITIONAL FRANCHISE TAXES ASSESSED AGAINST UNITED STATES SHOE CORPORATION UNDER DATE OF JUNE 19, 1984

FOR THE PERIOD JUNE 1, 1977 THROUGH JANU-
ARY 31, 1983 INCLUSIVE."
    The closing agreement reads as follows:

> It is hereby stipulated and agreed that for purposes of
> settlement, the correct adjusted incomes of the
> above-named U.S. Shoe Corporation for the years 7/
> 31/78 to 1/31/83, both inclusive, are in the amounts
> set forth in attached schedules and that upon the
> basis of such adjusted incomes there are due taxes,
> penalty and interest to December 27, 1984 totaling
> $95,836.06.
>
> *It is further stipulated that this agreement and
> the payment of the above additional taxes shall serve
> as a final disposition of the taxpayer's franchise tax
> liability up through and including the year ended
> January 31, 1983.* [Emphasis added.]

U.S. Shoe argues that the emphasized language unam-
biguously settled its franchise tax liability for all years
prior to January 31, 1983. The emphasized language sup-
ports U.S. Shoe's position. However, the meaning of a
particular provision in a contract is to be determined by
looking at the whole contract. *Crown Life Ins. Co. v.
LaBonte,* 111 Wis. 2d 26, 36, 330 N.W.2d 201, 206
(1983).

    When the contract is considered as a whole, the
conclusion is inescapable that it was intended to apply
only to tax years July 31, 1978 to January 31, 1983. The
closing agreement settled a dispute between U.S. Shoe
and the department with respect to the June 19, 1984
additional assessment directed to fiscal years 1978–83.
The agreement has no application to the department's
March 7, 1980 additional franchise tax assessment. For
these reasons, we reject U.S. Shoe's argument that the

closing agreement bars the department from proceeding on its March 7, 1980 additional assessment.

## II.

## THE LOSS CARRY-OVER ISSUE

### A.

The commission concluded: "[U.S. Shoe] is entitled to carry forward the losses of Freeman-Toor (Del.) or Freeman-Toor (OH) during 1971-75 as offsets against its 1976 and 1977 Wisconsin income for corporate franchise tax purposes under sec. 71.06, 1975-77 [S]tats. to the extent income was earned by the same trade or business as incurred the losses initially. *Fall River Canning Co. v. Wisconsin Dept. of Taxation,* 3 Wis. 2d 632 [89 N.W.2d 203] (1958) no longer controls under reenacted sec. 71.06, 1975-77 [S]tats." The commission was of the opinion that the test of "business continuity"[2] was mandated by sec. 71.06, as reenacted by sec. 84n, ch. 224, Laws of 1975.

We give no deference to the commission's construction of sec. 71.06(1), Stats. (1975), because the question of whether the revision of sec. 71.06(1) has changed the rule adopted in *Fall River* is one of first impression. *See Local No. 695 v. LIRC,* 154 Wis. 2d 75, 84, 452 N.W.2d 368, 372 (1990) (Where legal question is concerned and there is no evidence of any special expertise or experi-

---

[2]*See Libson Shops, Inc. v. Koehler,* 353 U.S. 382, 386-87, 390 (1957) (under secs. 23(s) and 122 of the Internal Revenue Code of 1939, as amended, the surviving corporation may offset business losses sustained by merged corporations only to the extent that the income against which its offset is claimed was produced by substantially the same businesses which incurred the losses).

ence, weight to be afforded agency interpretation is no weight at all). There is no administrative expertise or precedent disclosed in respect to the resolution of this unique issue. Nor is the commission more competent than this court to interpret and apply sec. 71.06(1), Stats. (1975). *See id.*

Section 71.06, Stats. (1949), which was in effect when *Fall River* was decided, provided:

> If a taxpayer . . . sustains a net business loss, such loss . . . may be offset against the net business income of the subsequent year and, if not completely offset by the net business income of such year, the remainder of such net business loss may be offset against the net business income of the following year. For the purposes of this section, net business income shall consist of all the income attributable to the operation of a trade or business regularly carried on by the taxpayer . . . .

The *Fall River* court concluded that under sec. 71.06, Stats. (1949), the carry-over privilege was limited to the "identical taxpayer" who sustained the business loss. *Fall River,* 3 Wis. 2d at 638, 89 N.W.2d at 206. It therefore examined Wisconsin law respecting corporate mergers to determine whether the surviving corporation could be considered the same entity as the merged corporation. It found appropriate the following language from *Wisconsin Elec. Power Co. v. Department of Taxation,* 251 Wis. 346, 356, 29 N.W.2d 711, 716 (1947):

> A merger or consolidation statute may expressly provide that all constituent corporations shall be continued in the surviving corporation. However, there is no such provision in sec. 196.80(1)(c), Stats. The merged corporation is divested of its estate, property rights, privileges, and franchises. It is "without property with which to do business, and

without the right lawfully to do business, [and] is dissolved by the operation of the law which brings this condition into existence."

*Fall River,* 3 Wis. 2d at 636, 89 N.W.2d at 205 (citations omitted).

The *Fall River* court stated: "The decision in the *Wisconsin Electric Power Co. Case* established the status of merging corporations in this state. The merging corporations cease to exist by operation of law and but one entity, the surviving corporation, remains." *Id.* at 637, 89 N.W.2d at 206.[3]

The court further said:

The appellant [taxpayer] is unable to show by any language which clearly specifies the same[,] the right to deduct the carry-over losses of the merged corporations and therefore it is unable to claim the deduction. The merging corporations elected to forego this carry-over privilege when they chose to merge. The privilege is confined to the *identical taxpayer* who sustained the business loss . . ..

*Fall River,* 3 Wis. 2d at 637–38, 89 N.W.2d at 206 (emphasis added).

*Fall River* establishes that the right to deduct the carry-over losses of merged corporations must be shown by clear language. The *Fall River* court's construction of sec. 71.06(1), Stats. (1949), became a part of the statute. *See Salerno v. John Oster Mfg. Co.,* 37 Wis. 2d 433, 441, 155 N.W.2d 66, 70 (1967) (where courts interpret a statute and the legislature fails to subsequently amend the

_____

[3]Section 180.67, Stats. (1975), provided that, upon merger, the separate existence of the merged corporations ceased and all property and every other interest belonging to the merged corporations was transferred to and vested in the surviving or new corporation.

statute to effect a change, the court's interpretation of the statute becomes a part thereof). The *Fall River* court's construction was not overruled by the repeal and reenactment of the statute. *See Bruner v. Department of Revenue,* 57 Wis. 2d 70, 76, 203 N.W.2d 663, 666 (1973) ("The mere repeal and re-enactment of substantially the same section does not overrule the prior court interpretations.").

The commission found that, after amendment, sec. 71.06(1), Stats. (1975), "clear[ly] and unambiguous[ly]" mandated the surviving corporation's right to deduct the carry-over losses of merged corporations. Section 71.06(1) permitted a corporation to offset "any . . . net business . . . loss . . . attributable to the operation of a trade or business in this state." Because the amendment omitted the qualifying language, "regularly carried on by the taxpayer," the commission concluded that, "[t]he clear focus of the reenacted provision is the trade or business in this state. Therefore, we are of the opinion that the test of business continuity is mandated by the reenacted language and that the test of *Fall River Canning* is no longer operative."

The commission relied on "persuasive" federal case law. In *Wisconsin Electric Power,* the Wisconsin Supreme Court rejected this line of authority.

> There is considerable authority in recent federal cases to the effect that even in the absence of statutory provision a merged corporation is continued in the surviving corporation for tax exemption and deduction purposes, but it is contrary to earlier and, in our opinion, better reasoned authority such as *Rochester R. Co. v. Rochester*[, 205 U.S. 236, 256 (1907)].

*Wisconsin Elec. Power,* 251 Wis. at 356–57, 29 N.W.2d at 716 (footnote omitted). The court described *Rochester Railroad* as holding that vesting the property rights and privileges of the merged corporation in the surviving corporation was not sufficient to transfer a statutory tax deduction privilege. *Id.* at 357, 29 N.W.2d at 716.

*Wisconsin Electric Power* was decided before *Libson Shops,* in which the United States Supreme Court applied the continuity of business standard to a post-merger loss carry-forward. *Libson Shops,* 353 U.S. at 386. The *Libson Shops* Court did not, however, consider the government's argument that the statutory carry-over privilege was not available unless the corporation claiming it was the same taxable entity as that which sustained the loss. *Id.* at 385–86. Thus, *Libson Shops* is not authority for rejection of *Fall River*'s "identical taxpayer" test.

### B.

■ The business loss carry-forward authorized by sec. 71.06, Stats., "falls within the category of tax privileges which, as matters of legislative grace, must be strictly construed against the taxpayer." *Midland Fin. Corp. v. Department of Revenue,* 116 Wis. 2d 40, 46, 341 N.W.2d 397, 400 (1983). In view of the strict-construction requirement, we disagree with the commission's conclusion that the statute "clear[ly] and unambiguous[ly]" mandates that the business continuity test be applied to the carry-forward of business losses of pre-merger corporations. However, we recognize that the tax appeals commission did not arrive at its conclusion capriciously or frivolously. We therefore accept for purposes of analysis that sec. 71.06(1), Stats. (1975), is susceptible of the construction given it by the commission. Because the

statute is ambiguous, we may resort to extrinsic aids to determine legislative intent. *State v. Vonesh*, 135 Wis. 2d 477, 483, 401 N.W.2d 170, 173 (Ct. App. 1986). "One of the most valuable extrinsic aids of judicial construction is legislative history." *Id.* (quoting *Milwaukee Co. v. Labor & Indus. Review Comm'n,* 113 Wis. 2d 199, 204, 335 N.W.2d 412, 415 (Ct. App. 1983).

The commission acknowledged that the legislative purpose in repealing and recreating sec. 71.06(1), Stats., was to change the offset from total income to an apportionment basis.[4] The commission pointed out that despite this stated purpose, the phrase "carried on by the taxpayer" was not reenacted and the phrase "in this state" was substituted. The commission concluded that "[t]he net effect is that the term 'trade or business' is no longer modified as to the identity of the offset claimant—i.e., a certain legal entity, or the same taxpayer as incurred the loss which formed the basis for the *Fall River* interpretation." However, the phrase "in this state" is, as the commission conceded, an "apportionment related phrase." Therefore, there is no clear legislative intent to eliminate the "identical taxpayer" requirement of *Fall River.* The change in language on which the commission relies is consistent with the legislative purpose to change the loss offset from total income to an apportionment basis.

## C.

U.S. Shoe points to other changes in the language of sec. 71.06(1), Stats. (1975), which it claims supports its

---

[4]*See* Report of Joint Survey Committee on Tax Exemptions, Engrossed 1975 S.B. 755, as amended by Conference Amendment 1, sec. 11 at 3 and 6 (March 23, 1976).

position that it may utilize the net business loss carryovers of the merging corporations. U.S. Shoe concedes that the purpose of the 1975 amendments was to provide for the apportionment of the net business loss before it is deducted from income in later years. It argues, however, that there is nothing in the legislative history which establishes that this was the sole intended purpose of the amendments. Where a statute has been construed by an appellate court, the legislature is presumed to know that in the absence of a change in the law, the court's construction will remain unchanged. *State v. Banks*, 105 Wis. 2d 32, 46, 313 N.W.2d 67, 73 (1981). It is therefore unlikely that the legislature would have changed the *Fall River* rule without stating that it intended to do so.

The most conclusive evidence that the legislature did not intend to change the *Fall River* rule is found in the report of the Joint Survey Committee on Tax Exemptions.[5] The report, which contains an analysis of the changes the amendments would make in the law, repeatedly refers to changes in terms of apportionment. Nowhere in the report is there any suggestion that the amendments would change the law to allow a surviving corporation to offset against its net business income, the net business losses sustained by corporations with which it merged. Further, the report indicates that the net effect on general program revenues from the proposed change would be an increase of $200,000.[6] However, permitting the surviving corporation to offset against its Wisconsin net business income the business losses incurred by merging corporations in any of the next five

[5]See Report of Joint Survey Committee on Tax Exemptions, Engrossed 1975 S.B. 755, as amended by Conference Amendment 1, sec. 11 at 3 and 6 (March 23, 1976).

[6]*Id.* at 4.

preceding income years could significantly *decrease* general program revenues.

■

For these reasons, we reject the commission's conclusion that the language of sec. 71.06(1), Stats. (1975), is "reasonably clear and unambiguous" as applied to post-merger loss carry-overs. We decline to find a legislative intent to change the *Fall River* rule on the basis of the 1975 amendments.

### D.

Finally, we address the commission's persistence in substituting the continuity of business standard for the *Fall River* standard. In a similar case, the Dane County Circuit Court reversed the commission for much the same reasons we affirm the circuit court today. *See Wisconsin Dep't of Revenue v. McHenry Sand and Gravel Co.,* Wis. Tax Reporter 202–769 (CCH 1986). The commission is bound by the circuit court's construction of sec. 71.06(1), Stats. (1975). Section 73.015(2), Stats., provides that "[i]f the circuit court construes a statute adversely to the contention of the department of revenue, the department shall be deemed to acquiesce in the construction so adopted unless an appeal to the court of appeals is taken . . .."

■

We recognize that in *McHenry Sand and Gravel,* the circuit court construed a statute consistent with the department's position. Nonetheless, we conclude that the statute's purpose is served if the department and the tax appeals commission are bound by an unappealed decision of the circuit court whether that decision construes a statute consistently or inconsistently with the department's construction. We have held that "[t]his

136

statute [sec. 73.015(2), Stats.,] is designed to insure tax law stability by allowing taxpayers to rely on unappealed circuit court decisions in structuring their financial affairs." *McDonald Lumber Co. v. Department of Revenue,* 117 Wis. 2d 446, 447, 344 N.W.2d 210, 211 (Ct. App. 1984). It would be anomalous if a taxpayer could rely only on unappealed circuit court decisions decided adversely to the department's construction of a statute, and not on those adopting the department's position.

## E.

The commission may be correct that the continuity of business standard is a fairer way to treat pre-merger business losses. The standard treats merged and nonmerged corporations the same. However, if the *Fall River* "identical taxpayer" rule is to be abandoned or modified, the supreme court or the legislature must act. Neither has done so.

*By the Court.*—Order affirmed.