ANDREW, J.T.C.
This is a state tax action in which plaintiff, International Flavors & Fragrances, Inc., challenges a final determination of an assessment for the 1975 and 1976 tax years made pursuant to the Corporation Business Tax Act, N.J.S.A. 54:10A-1 et seq. (the act) by defendant Director of the Division of Taxation. At issue is the calculation of plaintiff’s entire net income under the act.
The Corporation Business Tax is assessed on the basis of entire net worth and entire net income. N.J.S.A. 54:10A-5. Entire net income is defined as total net income from all sources, and is deemed prima facie equal in amount to the taxable income, before net operating loss deduction and special deductions, which the taxpayer is required to report for federal *619 income tax purposes. N.J.S.A. 54:10A-4(k). N.J.S.A. 54:10A-4(k)(l) (hereinafter § 4(k)(l)) provides, however, that:
Entire net income shall exclude 100% of dividends which were included in computing such taxable income for Federal income tax purposes paid to the taxpayer by one or more subsidiaries owned by the taxpayer to the extent of the 80% or more ownership of investment described in subsection (d) of this section. With respect to other dividends, entire net income shall not include 50% of the total included in computing such taxable income for federal income tax purposes. [Emphasis supplied].
The “80% or more ownership of investment” requirement of § 4(k)(l) is set forth in N.J.S.A. 54:10A 4(d) (hereinafter § 4(d)), which provides for a reduction in the net worth of a corporation as follows:
... The foregoing aggregate of values shall be reduced by 50% of the amount disclosed by the books of the corporation for investment in the capital stock of one or more subsidiaries, which investment is defined as ownership (1) of at ¡east 80% of the total combined voting power of all classes of stock of the subsidiary entitled to vote and (2) of at least 80% of the total number of shares of all other classes of stock except nonvoting stock which is limited and preferred as to dividends. In the case of investment in an entity organized under the laws of a foreign country, the foregoing requisite degree of ownership shall effect a like reduction of such investment from net worth of the taxpayer, if the foreign entity is considered a corporation for any purpose under the United States federal income tax laws, such as (but not by way of sole examples) for the purpose of supplying deemed-paid foreign tax credits or for the purpose of status as a controlled foreign corporation. In calculating the net worth of a taxpayer entitled to reduction for investment in subsidiaries, the amount of liabilities of the taxpayer shall be reduced by such proportion of the liabilities as corresponds to the ratio which the excluded portion of the subsidiary values bears to the total assets of the taxpayer.[1] [Emphasis supplied].
The parties have stipulated that since 1968 when § 4(k)(l) was enacted in its present form, defendant has interpreted § 4(k)(l) to require that the taxpayer corporation directly own 80% or more of its subsidiary’s total voting and nonvoting stock, except nonvoting stock which is limited and preferred as to dividends, in order to qualify for the 100% subsidiary dividend exclusion *620 provided by § 4(k)(l).[2] Defendant has not considered indirect ownership of a corporation by a taxpayer corporation through another corporation which it directly owns or controls, to qualify for the 80% ownership test of § 4(k)(l). It is plaintiff’s position that it is entitled to the 100% dividend exclusion from net income even though it is the record owner of less than 80% of the stock of the subsidiary, because the remainder of the subsidiary’s stock is owned by another subsidiary which is wholly owned by plaintiff.
The parties have further stipulated the following facts. Plaintiff, a New York corporation authorized to do business in New Jersey, was, at all times relevant to this action, the owner of all of the capital stock of International Flavors & Fragrances I.F.F. (Nederland) B.V. (hereinafter IFF-Holland). Plaintiff was also the record owner of 30% of the capital stock of International Flavors & Fragrances I.F.F. (France) S.A.R.L. (hereinafter IFF-France), and of 63% of the capital stock of I.F.F. Essencias e Frangrancias Ltda. (hereinafter IFF-Brazil). IFF-Holland owned all of the remaining IFF-France and IFF-Brazil stock.
In the tax years 1974 and 1976, plaintiff included in its taxable income for Federal income tax purposes, dividends received from IFF-France and IFF-Brazil in the following amounts:
*621 IFF-France
IFF-Brazil
Total
1974 1976
$575,611.00 $1,209,070.00
$177,152.00 $ 812,905.00
$752,763.00 $2,021,975.00
Under the Federal income tax laws, IFF-France and IFF-Brazil were considered corporations for the purpose of status as controlled foreign corporations.
In accordance with its interpretation of §§ 4(k)(l) and 4(d), plaintiff excluded 100% of the dividends it received from IFF-France and IFF-Brazil on its 1974 and 1976 New Jersey Corporation Business Tax returns.[3]
Defendant audited plaintiffs Corporation Business Tax returns for the 1974, 1975 and 1976 tax years, and by letter dated December 2, 1980, determined that plaintiff was liable for additional taxes for the years 1975 and 1976. In making these computations, defendant permitted only a 50%, rather than a 100%, exclusion from plaintiffs net income base for dividends received by plaintiff from IFF-France and IFF-Brazil in 1974 and 1976. In other words, defendant allowed only the § 4(k)(l) exclusion for “other dividends,” and not the exclusion provided for dividends received from a subsidiary. The determination for 1975 reflected plaintiffs dividends received in 1974. However, because defendant applied plaintiffs prepayment of 1975 tax to the amount owing for 1974, it resulted in a deficiency for 1975.
Following a conference between plaintiff and representatives of the Division of Taxation, the Division issued a final determination letter dated April 8,1981, upholding its previous determination. The complaint in this action followed.
*622 As computed at the statutory minimum to May 15, 1982, the total amount of taxes and interest due from plaintiff is $21,-545.19 from the 1975 tax year and $17,240.49 for the 1976 tax year. The taxes have not yet been paid and interest continues to accrue.
Initially, both parties devote much of their legal memoranda to the issue of the proper weight to be accorded by this court to defendant’s policy of requiring direct record ownership by the taxpayer corporation of at least 80% of the stock of the subsidiary in order to qualify for the 100% dividend exclusion. Defendant asserts that his policy is entitled to “substantial weight” as a continuous course of practical construction of a tax statute by the taxing agency, citing for support Public Service Electric & Gas Co. v. Woodbridge Tp., 73 N.J. 474, 481, 375 A.2d 1165 (1977); Hoganaes Corp. v. Taxation Div. Director, 145 N.J.Super. 352, 360, 367 A.2d 1182 (App.Div.1976) and J.B. Williams, Inc. v. Glaser, 114 N.J.Super. 156, 160, 275 A.2d 447 (App.Div. 1971).
Plaintiff, on the other hand, does not directly challenge the validity of defendant’s policy for his failure to observe the formal notice and hearing requirements of the Administrative Procedure Act, N.J.S.A. 52:14B-1 et seq. Plaintiff, instead, observes that the rationale for according weight to an agency’s practical construction of a statute for a period of years is that, absent legislative interference, the agency’s interpretation is evidence of its conformity with the legislative intent. J.B. Williams Co., Inc. v. Glaser, supra, at 160, 275 A.2d 447. Plaintiff argues that legislative inaction with respect to an unpublished internal agency policy can be accorded no evidential weight in the absence of any showing that the Legislature knew of the policy.
Without considering the relevance of defendant’s citation of authority for his position, it is clear that he may enforce a statutory provision without promulgating a rule pursuant to the provisions of the Administrative Procedure Act, if there is an adequate statutory standard for the action taken. See Equita *623 ble Life Mort. v. N.J. Div. of Taxation, 151 N.J.Super. 232, 240, 376 A.2d 966 (App.Div.1977), certif. den. 75 N.J. 535, 384 A.2d 514 (1977); R.H. Macy & Co., Inc. v. Taxation Div. Director, 77 N.J.Super. 155, 180, 185 A.2d 682 (App.Div.1962), aff’d 41 N.J. 3, 194 A.2d 457 (1963); Airwork Services Div. v. Taxation Div. Director, 2 N.J.Tax 329, 341 (Tax Ct.1981), aff’d o.b. per curiam, 4 N.J.Tax 532 (App.Div.1982), certif. granted 93 N.J. 246, 460 A.2d 656 (1983).
Words in a statute, however, are to be given their ordinary and primary meaning, unless there is an explicit indication of a special meaning to be attached to the words. Service Armament Co. v. Hyland, 70 N.J. 550, 556, 362 A.2d 13 (1976). Defendant may not give the statute any greater effect than its language allows. Kingsley v. Hawthorne Fabrics, Inc., 41 N.J. 521, 528, 197 A.2d 673 (1964). An agency’s interpretation is not conclusive, and a court must override an administrative construction where it is contrary to the meaning of the statute. Service Armament Co. v. Hyland, supra, at 561-562, 362 A.2d 13; Kingsley v. Hawthorne Fabrics, Inc., supra, at 528, 197 A.2d 673; see Spencer Gifts, Inc. v. Taxation Div. Director, 3 N.J.Tax 482, 509, 182 N.J.Super. 179, 440 A.2d 104 (Tax Ct.1981).
Ultimately, then, what this court must decide is not the weight to be accorded to defendant’s policy, but the meaning and intent of §§ 4(k)(l) and 4(d). Skyline Industries v. Taxation Div. Director, 3 N.J.Tax 612, 617 n. 2 (Tax Ct.1981).
Plaintiff contends that, facially, § 4(k)(l) indicates a general intent to provide relief from the potential double taxation that might occur upon the taxation of corporate dividends received from the corporate subsidiary of the taxpayer parent corporation. To ascertain the meaning of the specific terms of §§ 4(k)(l) and 4(d), plaintiff asserts that, since the starting point in the calculation of entire net income under the New Jersey act is income reported for federal income tax purposes, this court should therefore adopt and incorporate certain concepts found in the Internal Revenue Code of 1954, as amended, *624 26 U.S.C. § 1 et seq. (I.R.C.). Plaintiff particularly points to the concept of “affiliated group,” defined at I.R.C. § 1504(a).
There is no support for the proposition that federal income taxation concepts are the definitional source of the terms utilized in the New Jersey act. Plaintiff observes that, under the I.R.C., 80% is the critical level of stock ownership for determining membership in an affiliated group for purposes of filing consolidated returns, and concludes that there is a “conscious parallelism” between the New Jersey act and the I.R.C. It views as significant the fact that I.R.C. § 243(a)(3) permits a 100% deduction for dividends received from a domestic corporation which is a member of an affiliated group.[4] Consolidated returns, however, have never been permitted under the New Jersey Act. See N.J.A.C. 18:7-4.15; United States Steel Corp. v. Taxation Div. Director, 38 N.J. 533, 546, 186 A.2d 266 (1962).
While the starting point for determination of entire net income under the act is taxable income, before net operating loss deduction and special deductions, which the taxpayer is required to report for Federal income tax purposes, the Corporation Business Tax deviates from the federal tax by providing its own inclusions and exclusions from the tax base. N.J.S.A. 54:10A-4(k). Only at the initial point is it indicated that the Legislature intended that federal standards were to be controlling.
Both parties next contend that the plain words of the statute support their interpretations.
Defendant characterizes the 100% dividend exclusion as a tax preference, which is to be strictly construed against the party claiming the exclusion. See MacMillan v. Taxation Div. Director, 180 N.J.Super. 175, 178, 434 A.2d 620 (App.Div.1981), aff’d 89 N.J. 216, 445 A.2d 397 (1982).
*625 The legislative history of the 1968 amendments to the act, enacted by L. 1968, c. 250, which provided for the 100% exclusion of subsidiary dividends, and for the § 4(d) definition of subsidiary, indicates that defendant correctly denominates the 100% dividend exclusion as a tax preference. “Tax Equity and Tax Relief: Property, Sales, Corporation and Death Taxes” The 12th Report of the Commission on State Tax Policy, at 44 (1968), (hereinafter Report) whose recommendations resulted in the 1968 amendments to the act, noted that investments in subsidiaries by major corporate enterprises is significant in extent, and that:
Dividends received from such subsidiaries are also an important tax factor. Under the present tax law such subsidiary capital is included in the tax base for the net worth tax, and 50% of the dividends received by the parent corporation from the subsidiary are included in the tax base for the income tax. The result is that major corporations will find a serious tax disadvantage in locating their corporate headquarters in New Jersey, especially if they do a national or worldwide business in which subsidiaries are often a required form of business organization. These same corporations can be a source of important economic development, jobs and tax base for the state. [Id. at 44].
The ultimate recommendation of the Committee, subsequently enacted, was to “[ejliminate from the income tax base inter-corporate dividends received from 80% owned subsidiaries...” Report, supra at 47. Thus, the 100% subsidiary dividend exclusion appears to have been designed as a tax incentive or preference, to encourage the location of corporation headquarters within New Jersey.
Defendant argues that the tax preference provided by §§ 4(k)(l) and 4(d) should be strictly construed to require direct ownership of the subsidiaries’ stock because the statute does not explicitly establish any rules of attribution or indirect ownership that would permit the aggregation of the stock owned by plaintiff and IFF-Holland so as to constitute the requisite ownership of 80% or more of the stock of IFF-France and IFF-Brazil. He asserts that the statutory definition of subsidiary contained in § 4(d) must clearly and unmistakably reflect the concept of indirect ownership in order to permit the 100% dividend exclusion, noting that the Legislature could easily have *626 drafted the statute in such a manner if it had intended to exclude the dividends at issue here.
By way of example, defendant points to the New Jersey Business Corporation Act, N.J.S.A. 14A:1-1 et seq., which defines subsidiary at N.J.S.A. 14A:l-2(r) as:
... a domestic or foreign corporation whose outstanding shares are owned directly or indirectly by another domestic or foreign corporation in such number as to entitle the holder at the time to elect a majority of its directors without regard to voting power which may thereafter exist upon a default, failure or other contingency.
Defendant comments that N.J.S.A. 14A:l-2(r) was enacted in 1968, which was the same year that the relevant provisions of §§ 4(d) and 4(k)(l) relating to the 100% dividend exclusion were enacted, and reasons that the lack of the term “indirect” in § 4(d) is an unmistakable indication of the legislative intent that only direct ownership of the stock of a subsidiary is determinative of eligibility for the 100% dividend exclusion.
Plaintiff, however, calls attention to the fact that the New Jersey Business Corporation Act, N.J.S.A. 14A:1-1 et seq., was drafted by the New Jersey Corporation Law Revision Commission rather than by the Legislature itself, and persuasively argues that the language of N.J.S.A. 14A:l-2(r)[5] cannot sensibly be used to give meaning to the language of §§ 4(d) and 4(k)(l). Plaintiff notes, too, that while §§ 4(d) and 4(k)(l) do not expressly provide for any rules of attribution or indirect ownership, neither does either provision expressly mandate the direct or record ownership contended for by defendant, which could as easily have been specified by the Legislature.
Defendant responds that the Legislature specifically incorporated an indirect ownership test in other provisions of the Corporation Business Tax Act itself. Those provisions define taxable indebtedness owed by the taxpayer corporation to a 10% or more stockholder, resulting in increases in the net worth and net income bases. N.J.S.A. 54:10A-4(e) provides:
*627 “Indebtedness owing directly or indirectly” shall include, without limitation thereto, all indebtedness owing to any stockholder or shareholder and to members of his immediate family where a stockholder and members of his immediate family together or in the aggregate own 10% or more of the aggregate outstanding shares of the taxpayer’s capital stock of all classes.
N.J.S.A. 54:10A- -4(d)(5) increases net worth by the amount of indebtedness owing directly or indirectly to holders of 10% or more of the aggregate outstanding shares of the taxpayer’s stock: Similarly, N.J.S.A. 54:10A-4(k)(2)(E) prohibits, with certain exceptions, the deduction from entire net income of 90% of interest on indebtedness owing directly or indirectly to holders of 10% or more of the aggregate outstanding shares of the taxpayer’s stock.
Defendant states that the Legislature used a standard of stock ownership beyond direct ownership to identify the necessary 10% stock ownership that defined taxable indebtedness. He argues that the absence of comparable statutory direction in defining subsidiary for dividend exclusion purposes reinforces his interpretation that only direct or record ownership of the stock establishes a subsidiary relationship.
Plaintiff, however, contends that the phrase “directly or indirectly” used in the provisions dealing with indebtedness, does not deal with the issue of attribution of stock from a stockholder to a creditor and whether together they own a 10% interest in the taxpayer, but rather, addresses the question of whether the apparent creditor is in fact a 10% stockholder or whether a 10% stockholder uses a third party as a conduit through which to loan money to the taxpayer. The cases which have considered this issue would seem to support plaintiff’s position.
In Werner Machine Co. v. Zink, 6 N.J.Super. 188, 194, 70 A.2d 774 (App.Div.1950), the court stated:
. .. [W]e are of the opinion that the use of the phrase “directly or indirectly” is intended to provide for a situation where a stockholder otherwise coming within the statutory language, might extend credit to the corporation either personally or through an instrumentality, managed or controlled by him....
In Fedders Financial Corp. v. Taxation Div. Director, 3 N.J.Tax 576, 586 (Tax Ct.1981) the court determined that:
*628 The test for includability of indebtedness that has been developed is one of nexus and control. Although a creditor may not be a 10% stockholder, still an indebtedness owing to such a creditor is includable in the taxpayer’s net worth if the creditor is “managed or controlled” by the individual or entity that does hold 10% or more of the taxpayer’s stock.
See also Skyline Industries v. Taxation Div. Director, supra at 619.
It is clear that the phrase “directly or indirectly” has not been interpreted by the courts to aggregate the stock of the taxpayer corporation owned by the apparent creditor with stock owned by the parent of the creditor to reach the requisite 10% ownership. The only provision that permits such aggregation is N.J.S.A. 54:10A-4(e), concerning a stockholder and members of his immediate family. Plaintiff observes, however, that defendant has promulgated N.J.A.C. 18:7-4.5(d), as follows:
In the case of a creditor, corporate or otherwise (other than an individual) including an estate, trust or other entity, indebtedness, if not includable by reason of direct ownership of taxpayer’s stock by such creditor, shall be includible if both the taxpayer and the creditor are substantially owned or controlled directly or indirectly lay the same interests, or where the creditor is controlled, directly or indirectly by interests, including members of the immediate family of stockholders, which in the aggregate hold ten per cent or more of the taxpayer’s outstanding shares of capital stock of all classes. For the purpose of determining the degree of stock ownership of a corporate creditor, all the shares of the taxpayer's capital stock held by all corporations bearing the relationship of parent, subsidiary or affiliate of the corporate creditor shall be aggregated. [Emphasis supplied].
Plaintiff argues that, with the final sentence of the regulation, defendant has adopted a rule of constructive ownership, or attribution, with respect to the indebtedness issue, which is not consistent with his position in the present case.
Plaintiff would appear to be correct on this point. It asserts, though, that the statutory source for the attribution rule contained in N.J.A.C. 18:7-4.5(d) must be the definition of subsidiary contained in § 4(d), which, through § 4(k)(l) also applies to the 100% dividend exclusion.
Plaintiffs reasoning is not entirely convincing. The statutory source for defendant’s regulation regarding attribution between corporate affiliates for the purposes of determining who is a 10% stockholder is not readily apparent. The regulation does weak *629 en the force of defendant’s position that attributed ownership such as plaintiff seeks here must be clearly and unmistakably reflected in the statute.
More to the point, plaintiff examines the words of §§ 4(k)(l) and 4(d). It emphasizes that § 4(k)(l) provides for the 100% dividend exclusion if the taxpayer corporation has 80% or more “ownership of investment” in the subsidiary, as described in § 4(d). § 4(d), in turn, speaks in terms of ownership of at least 80% of the “total combined voting power” of the subsidiary. Plaintiff concludes that the Legislature’s use of the terms “ownership of investment,” and “voting power” is indicative of a concern for the economic realities of the investment.
Plaintiff’s interpretation of the relevant statutory sections is consistent with the ordinary and primary meaning of the words which the Legislature used in drafting §§ 4(d) and 4(k)(l). Clearly plaintiff possesses 100% of the “ownership of investment” in IFF-France and IFF-Brazil directly and through its wholly owned subsidiary IFF-Holland. More importantly, it owns 100% of the “total combined voting power” of IFF-France and IFF-Brazil. Because it is in complete control of IFF-Holland, plaintiff owns the voting power of IFF-Holland with respect to IFF-France and IFF-Brazil.[6] Combined with its direct voting power, plaintiff possesses the requisite degree of control over both subsidiaries in question.
In every practical sense, plaintiff controls IFF-France and IFF-Brazil. That plaintiff should be permitted the 100% exclu *630 sion for the dividends received from those corporations is confirmed by the fact that the Legislature intended through §§ 4(d) and 4(k)(l), to remove tax disadvantages for corporations conducting business world-wide in the form of subsidiaries. See Report, supra at 44. There is nothing in the language, history or purpose of the statute which would indicate that the Legislature sought to differentiate between direct record ownership and indirect ownership through another corporate instrumentality in order to qualify for the 100% dividend exclusion. Legislative purpose appears to be to the contrary. Ibid.
Accordingly, the Clerk of the Tax Court is directed to enter a judgment vacating defendant's assessment including any related interest.

The quoted language is that of the amendment enacted by L. 1976, c. 28, approved June 2, 1976, effective immediately and applicable to taxpayers whose accounting periods ended after June 30, 1976. The amendment substituted “the total number of shares of all other classes of stock except nonvoting stock which is limited and preferred as to dividends,” for the previous language, “each class, if any, of nonvoting stock.” The ownership of nonvoting stock is not an issue in this case.

Similarly, defendant has, since 1968, interpreted “subsidiary” as used in § 4(d) and N.J.S.A. 54:10A-9 to require direct ownership by the taxpayer corporation of 80% of the voting stock, and 80% of other classes of stock, except stock which is limited and preferred as to dividends, of another corporation in order to qualify for the subsidiary exclusion from net worth and subsidiary deduction from net worth provided by those respective sections.

Due to an oversight, plaintiff did not exclude 50% of its investment in IFF-France and IFF-Brazil from its net worth base to which it would have been entitled, consistent with its interpretation of the 80% ownership requirement of § 4(d).

Plaintiff concedes that the dividends in question could not be deducted for federal income tax purposes, because plaintiffs subsidiaries are foreign corporations ineligible for inclusion in an affiliated group under I.R.C. § 1504(b)(3).

The Commissioners’ Comments to the New Jersey Business Corporation Act state that the definition of subsidiary contained in N.J.S.A. 14A:l-2(r) was adapted from Ohio Rev.Code Ann. § 1701.01(P).

The conclusion is reached because IFF-Holland is a wholly owned subsidiary of plaintiff, and there is no question that plaintiff is able to control the voting power of IFF-Holland. It is unnecessary in this case to reach the issue of whether the ownership of stock by a parent may be aggregated with that of a less than wholly owned subsidiary in order to constitute 80% or more ownership of a second subsidiary. The questionable example that comes to mind is a parent corporation which is the 40% owner of a first subsidiary and also owns 40% of a second subsidiary, which in turn owns 40% of the first subsidiary. It may be argued that the aggregate ownership of the first subsidiary is 80%, but it is doubtful that the parent “owns” the voting power of the second subsidiary.