ANDREW, J.T.C.
In this tale of two corporations, the issue is whether the net operating losses generated by one corporation for one tax year may be claimed as a legitimate corporation business tax deduction in a subsequent tax year by a second corporation after the loss-generating or first corporation has merged into the second or surviving corporation. Plaintiff, Richard’s Auto City, Inc., the surviving corporation, suggests that the New Jersey Corporation Business Tax Act (CBT act), N.J.S.A. 54:10A-1 to -40, specifically, § 4(k)(6), permits the loss carryover deduction while defendant, the Director of the Division of Taxation, *622 relying upon a regulation at N.J.A.C. 18:7-5.13(b), asserts that the claimed deduction is not allowable.
The parties were not able to fully stipulate all of the factual matters involved in this dispute but have submitted two stipulations which, according to the parties, reveal enough facts to enable this court to decide the legal issue presented on cross motions for summary judgment.
The facts, as presented in the parties’ stipulations, are relatively uncomplicated. Richard’s Auto City, Inc. is an automobile dealership located in Freehold, New Jersey, which was incorporated in this State and began its business operations in 1973. The stock of Richard’s Auto City, Inc. is owned completely by Richard Catena.
Richard Catena, Inc. was a leasing entity also located in Freehold, New Jersey, which was incorporated and began its business operations in 1983. The stock of Richard Catena, Inc. was also completely owned by Richard Catena. According to the parties, Richard Catena, Inc. was the leasing entity for Richard’s Auto City, Inc., the automobile dealership. It was the function of Richard Catena, Inc. to provide a financing source for retail automobile customers through a leasing program offered by Richard’s Auto City, Inc.
On January 1, 1984, Richard Catena, the sole shareholder of both corporations, transferred all of his stock in Richard Catena, Inc. to Richard’s Auto City, Inc. thereby making Richard Catena, Inc. a wholly-owned subsidiary of Richard’s Auto City, Inc. For the tax years ending December 31, 1984, December 31,1985 and October 31,1986, Richard Catena, Inc. incurred net operating losses of $421,837, $607,745 and $544,712 respectively, for a total of $1,574,294.
On October 31, 1986, in accordance with a merger plan, Richard Catena, Inc. and Richard’s Auto City, Inc. merged with Richard's Auto City, Inc. as the surviving corporation. The merger was officially memorialized by the filing of a certificate of merger with the Secretary of State’s office on December 19, 1986.
*623 After the merger, Richard’s Auto City, Inc. continued its premerger activities entailing sales, servicing and financing of new and used automobiles to the public. The post-merger business operations of Richard Catena, Inc. were accomplished in much the same manner as its pre-merger activities by a leasing department of Richard’s Auto City, Inc. To all intents and purposes the two operations, i.e., the automobile dealership and leasing-financing functions, continued essentially the same after the merger as before except for the fact that the former corporate entity known as Richard Catena, Inc. was a leasing department of Richard’s Auto City, Inc.
In its 1986 corporation business tax return, Richard’s Auto City, Inc. claimed, as a deduction, the net operating losses of $1,574,294 incurred by Richard Catena, Inc. during the tax years before the merger. One of the stipulations submitted by the parties reveals that these net operating losses were incurred as a consequence of an accelerated depreciation method that was then available for leased automobiles. According to the stipulation:
... a leased automobile was subject to an accelerated depreciation schedule which resulted in the cost of the automobile being deducted in the earlier years of a lease-term prior to Richard Catena, Inc.’s receipt of all the corresponding lease income. A substantial portion of the income from a particular lease transaction would then not be recognized until the later years to the lease-term, and/or upon sale of the automobile. Therefore, if subsequent to the merger, the pre-existing net operating losses are not able to be utilized, income from particular lease transactions would have to be realized without a corresponding offset for all of the deductions created by such transactions.
The Director disallowed the deduction taken by Richard’s Auto City, Inc. and issued a notice of tax assessment, dated April 17, 1989, setting forth additional tax due of $88,517 along with penalty and interest.[1] After review, the Director issued a final determination, dated November 16, 1989, confirming the original assessment. Plaintiff’s complaint in this court followed. Subsequently, the accounting firm of Ernst & Young, through counsel, was permitted to appear in this case as *624 amicus curiae solely for the purpose of submitting a brief on the issues presented in the cross motions for summary judgment.
The focal point of this litigation is N.J.A.C. 18:7-5.13(b). This regulation limits net operating losses to be carried over from one tax year to another to the actual corporation that sustained the loss. In a merger situation, the regulation permits the surviving corporation to carryover a net operating loss provided the survivor is the corporation that actually sustained the loss. In this case, since Richard Catena, Inc. sustained the losses and Richard's Auto City, Inc., the survivor of the merger, sought to claim the net operating losses, the Director disallowed the deduction.
Plaintiff and amicus maintain that the regulation at N.J.A. C. 18:7-5.13(b) is beyond the authority of the Director. Specifically, plaintiff contends that the Director’s regulation is in conflict with the enabling legislation in N.J.S.A. 54:10A-4(k)(6) with respect to net-operating-loss carryovers, and therefore, is invalid. In making this assertion, plaintiff relies upon the plain language of N.J.S.A. 54:10A-4(k)(6) (hereinafter § 4(k)(6)) and its legislative history and purpose. Amicus joins with plaintiff in the argument that the history and purpose of § 4(k)(6) do not support the Director’s regulation. Plaintiff and amicus also maintain that federal tax principles demonstrate the invalidity of the Director’s regulation.
Plaintiff, additionally, asserts that the New Jersey Business Corporation Act, specifically, N.J.S.A. 14A:10-6 (“[ejffect of merger or consolidation”), demonstrates that the Director’s regulation cannot be sustained. Last, plaintiff argues that, if this court sustains the validity of the Director’s regulation, it should only be applied prospectively from its effective date, February 3, 1986, and therefore, would not affect the claimed net-operating-loss carryovers for periods prior to the regulation’s effective date.
In response, the Director asserts that the regulation at N.J.A. C. 18:7-5.13(b) is within the ambit of her authority and is *625 consistent with the language and scheme of the CBT. With respect to the contention that federal tax principles are controlling, the Director maintains that the Legislature deliberately chose not to follow federal tax law. The Director also contends that tax attributes were never intended to be included in the statutory merger provision at N.J.S.A. 14A:10-6.
Moreover, noting that this case involves a tax exclusion or deduction, the Director urges that plaintiff has not met its burden of demonstrating that it clearly comes within the deduction provision. Last, the Director maintains that the effective date of the regulation is irrelevant because the regulation is merely the Director’s interpretation of the statutory provision at issue. If the interpretation is appropriate, it must apply, as the statute directs, to “any taxable year ending after June 30, 1984.” N.J.S.A. 54:10A-4(k)(6)(B).
I.
The CBT act, enacted in 1945, imposes a franchise tax on nonexempt foreign and domestic corporations. N.J.S.A.. 54:10A-2. The tax is measured essentially by reference to a corporation’s entire net income.[2] N.J.S.A. 54:10A-5.
From the inception of the act, and until 1985, the “entire net income” tax base was determined without any allowance for “net operating losses sustained during any year or period other than that covered by the [tax return].” N.J.S.A. 54:10A-4(k)(2)(D) (deleted by A. 1985, c. 143). The Legislature recognized that, not permitting a net operating loss to be carried over to a subsequent tax accounting period, would produce harsh results for many businesses whose yearly income may fluctuate from a loss in one year to a profit the next. See Report of the New Jersey Tax Policy Committee (Part Y, Non-Property Taxes in a Fair and Equitable Tax System) (February *626 23, 1972). This could serve to discourage new business ventures in this State because expected first year losses could not be used to offset gains in future years. Therefore, in 1985, the Legislature amended the CBT act to permit corporations to carryforward current net operating losses to future tax years. L.1985, c. 143, effective April 22, 1985.
In relevant part, the 1985 amendment, N.J.S.A. 54:10A-4(k)(6) provides as follows:
(A) Net operating loss deduction. There shall be allowed as a deduction for the taxable year the net operating loss carryover to that year.
(B) Net operating loss carryover. A net operating loss for any taxable year ending after June 30,1984 shall be a net operating loss carryover to each of the seven years following the year of the loss.
(C) Net operating loss. For purposes of this paragraph the term “net operating loss” means the excess of the deductions over the gross income used in computing entire net income----
(D) Change in ownership. Where there is a change in 50% or more of the ownership of a corporation because of redemption or sale of stock and the corporation changes the trade or business giving rise to the loss, no net operating loss sustained before the changes may be carried over to be deducted from income earned after such Changes. In addition where the facts support the premise that the corporation was acquired under any circumstances for the primary purpose of the use of its net operating loss carryover, the [Director may disallow the carryover.
Shortly after the Legislature enacted N.J.S.A. 54:10A-4(k)(6), the Director proposed and then adopted, effective February 3, 1986, the regulation at issue in this case. In pertinent part N.J.A.C. 18:7-5.13(b) provides:
The net operating loss may only be carried over by the actual corporation that sustained the loss. The net operating loss may, however, be carried over by the corporation that sustained the loss and which is the surviving corporation of a statutory merger____ Section 4(k) of the Act defines entire net income in terms of a specific corporate franchise.
As can readily be seen, the regulation does not permit plaintiff, Richard’s Auto City, Inc., the surviving corporation, to carryover and deduct the net operating losses of Richard Catena, Inc., the merged corporation. Had the merger been effected the other way around, with Richard Catena, Inc. as the surviving corporation of the statutory merger, the deduction *627 would have been allowed.[3] Plaintiff and amicus maintain that the Director’s regulation is invalid because it contravenes the statute it purports to interpret. Both argue that N.J.S.A. 54:10A-4(k)(6), in fact, permits a net loss carryover by the surviving corporation of a merger despite the fact that the survivor did not sustain the operating losses.
Our Supreme Court, in New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 560-63, 384 A.2d 795 (1978), summarized the standards applicable to judicial review of the validity of regulations promulgated by an administrative agency. Those which are pertinent to this case are:
(1) Administrative regulations are to be accorded a presumption of reasonableness, and the attacking party bears the burden of demonstrating that the regulations are arbitrary, capricious, unduly onerous or otherwise unreasonable. Id. at 561, 384 A.2d 795.
(2) Regulations must be within the fair contemplation of the enabling statute, but the court is not confined to a consideration of the statutory authority for a particular regulation, but may consider the entire enabling legislation. Id. at 561-62, 384 A.2d 795.
(3) The grant of authority to an administrative agency is to be liberally construed in order to enable the agency to accomplish its statutory responsibilities, and the courts should readily imply such incidental powers as are necessary to effectuate fully the legislative intent. Id. at 561, 384 A.2d 795.
(4) Courts are not free to substitute their judgment as to the wisdom of a particular administrative action for that of the agency so long as the action is statutorily authorized and not otherwise defective because arbitrary or unreasonable. Id. at 562-63, 384 A.2d 795. See also, Sorenson v. Taxation Div. Director, 2 N.J. Tax 470, 474-75, 184 N.J.Super. 393, 446 A.2d 213 (Tax 1981).
With these fundamental principles in mind, I turn to the present controversy. Plaintiff and amicus attack the regulation on several grounds.
*628 II.
A.

Plain meaning of statute.

Initially, plaintiff contends that the plain meaning of the language employed by the Legislature in N.J.S.A. 54:10A-4(k)(6) permits the deduction at issue. While conceding that § 4(k)(6) is “silent as to the treatment of carryovers in mergers and other corporate reorganizations,” nevertheless, plaintiff insists that the statute’s plain language permits a surviving corporation in a merger to carryover the losses of a merged corporation. A fair reading of the statute does not support plaintiff's assertion.
As the Director observes, the CBT act is a tax on a single entity and that concept is reflected in N.J.S.A. 54:10A-4 which defines “entire net income” in terms of a single “taxpayer’s entire net income.” That is also reflected in the fact that consolidated tax returns have never been permitted under the CBT act. See N.J.A.C. 18:7-4.15, -11.15; United States Steel Corp. v. Director, Div. of Tax., 38 N.J. 533, 546, 186 A.2d 266 (1962).
There is nothing in the literal language of § 4(k)(6) that permits one taxable entity to assume the tax attributes or benefits of another entity after a statutory merger.
B.

Legislative history.

Next, both plaintiff and amicus suggest that the legislative history of § 4(k)(6) reveals that the Director has created a rule that is not in harmony with the controlling statute.
They point to the message of Governor Thomas H. Kean relating to the enactment of § 4(k)(6) which, they urge, is a solid indication that the Legislature intended to extend net operating loss deductions to a survivor corporation in a merger. The Governor’s statement was to the effect that the amend *629 ment to the corporation business tax act permitting a “losscarryfo[r]ward ... puts New Jersey in a better competitive position with our neighbor states in competing for new businesses.” Noting that New York is one of our neighbor states, and inasmuch as New York’s franchise tax legislation permitted net operating loss carryforwards for surviving corporations in merger situations, see N. Y. Tax Law §§ 208(9)(f), (9)(f)(2-b, 2-c), (13), (15), and (17) (1989), plaintiff reasons that the intent of the amendment to the CBT act was to permit the same net operating loss carryforwards in New Jersey. I am not convinced.
To begin with, a Governor’s press release is not the most authoritative legislative history. Fields v. Hoffman, 105 N.J. 262, 270, 520 A.2d 751 (1987). Moreover, our Supreme Court has noted that even the legislative statement attached to an original bill is but a general statement of policy and does not detract from the plain meaning of the language of the legislative provision. Gabin v. Skyline Cabana Club, 54 N.J. 550, 557, 258 A.2d 6 (1969). More important, however, is the fact that the Governor’s statement simply does not go as far as plaintiff and amicus urge. The statement does not indicate, in any way, that the amending legislation was to be the same, or as liberal, as the allowable net-operating-loss deductions in the State of New York.
There is nothing in the Governor’s statement that reflects, either expressly or inferentially, an adoption of the specific New York State net-operating-loss carryover provisions. The Governor’s statement can just as well be understood to mean that since New Jersey will allow a net-operating-loss carryforward deduction, even though it is not as liberal as New York’s, “New Jersey [will still be] in a better competitive position with our neighbor states in competing for new businesses.”
Moreover, the net operating loss carryforward was designed to put “New Jersey in a better competitive position” not only with New York but with Connecticut, Pennsylvania and Delaware, also neighboring states. Plaintiff does not argue that *630 the net operating loss carryover provisions, if they exist at all, in Connecticut, Pennsylvania or Delaware are as liberal as in New York. Simply put, the Governor’s statement just does not provide the support for plaintiff’s position that plaintiff and amicus suggest.
Contrary to plaintiffs assertion, there is no indication in the legislative history that the loss carryover was designed to permit the averaging of the pre-merger losses of one business with the post-merger income of another business which had been operated and taxed separately before the merger. Instead, the available legislative history suggests that the Legislature was concerned with the fluctuating income of a single business. See Statement appended to Assembly Bill 2144 (1984) (“This exclusion from net income allows a carryforward of net operating losses incurred during the early years of a corporation’s business to offset the profits in later years.”).
C.

Mischief to be eliminated.

Plaintiff also claims that the meaning of § 4(k)(6) can be derived from the mischief that the Legislature sought to eliminate. See Brewer v. Porch, 53 N.J. 167, 174, 249 A.2d 388 (1969). That mischief, plaintiff maintains, which the statute seeks to prevent is the trafficking in loss corporations or trading of tax attributes. Plaintiff then notes that § 4(k)(6)(D) precludes loss carryovers when: (1) there is a change in 50% or more of the ownership of a corporation and the corporation changes the business giving rise to the loss, or (2) the facts indicate that a corporation was acquired for the primary purpose of the use of its net-operating-loss carryovers. From this, plaintiff argues that, absent the factual situations set forth in § 4(k)(6)(D), the statute does not reflect any intention to preclude loss carryovers in mergers, consolidations, or other corporate restructurings.
*631 The argument is wide of the mark. Plaintiff fails to observe that § 4(k)(6)(D) is a limiting or restrictive provision. It does not grant or confer any tax benefits. In other words, §§ 4(k)(6)(A) and (B) permit a net operating loss carryover to each of the seven years following the year of the loss. As previously noted, there is nothing in those granting provisions that permit one taxable entity to assume the tax deductions of another entity after a statutory merger. Section 4(k)(6)(D) does not expand these granting provisions but instead adds further restrictions based on the existence of the factual circumstances set forth in the limiting provisions. Plaintiff seeks to convert a limiting provision into one that confers tax benefits. That is clearly not what the Legislature intended.
III.

Federal Tax Principles.

Both plaintiff and amicus contend that federal tax principles demonstrate the invalidity of the Director’s regulation. First, plaintiff looks to federal case law dealing with issues of tax attributes in mergers and other corporate reorganizations prior to 1954, the year in which Congress adopted a specific provision covering loss carryovers in certain corporate acquisitions. See 26 U.S.C.A. § 381 (hereinafter I.R.C.). Plaintiff maintains that the case law interpreting the pre-1954 Internal Revenue Code (I.R. C.) provisions is relevant because, prior to 1954, the I.R. C., like § 4(k)(6) of the CBT act, was silent as to the tax treatment of loss carryovers in corporate reorganizations or acquisitions. Thus, plaintiff reasons that such federal case law should be given determinative weight in the interpretation of the statute at issue.
Plaintiff does not explain, however, why these federal decisions are evidence of the intent of the New Jersey Legislature in its enactment of § 4(k)(6), L. 1985, c. 143. Essentially, plaintiff asks this court to assume that the Legislature intended to embrace a judicial interpretation by the United States Supreme Court in 1939 with respect to a Pennsylvania statute. See *632 Helvering v. Metropolitan Edison Co., 306 U.S. 522, 59 S.Ct. 634, 83 L.Ed. 957 (1939).[4] Needless to say, plaintiff’s suggestion, at best, is questionable. There is nothing in the statutory language employed by the Legislature or in the legislative history that indicates that the Legislature intended to follow nearly 50-year-old federal case law. If it had, that intention could have been easily expressed in the legislation.
To the contrary, however, the Legislature had to be acutely aware of the fact that prior to the extensive revision of the I.R.C. in 1954, the federal law governing loss carryovers was rife with flagrant abuses. See Comment, The Loss Carryover Deduction and Changes in Corporate Structure, 66 Colum.L.Rev. 338, 342-43 (1966); Comment, Net Operating Loss Carryovers and Corporate Adjustments, 69 Yale L.J. 1201, 1209-11 (1960). See also B.T. Arnett, State and Federal NOLD Differences Following Changes in Ownership, 11 Journal of State Taxation 71, 75 (Summer 1992). It is difficult to believe that the Legislature intended to perpetuate an abusive program for loss carryovers by silently adopting federal law predating the 1954 tax code revisions.
Additionally, the burden facing plaintiff in this matter must be kept in mind. Plaintiff must overcome the presumption of reasonableness that attaches to all administrative regulations. New Jersey Guild of Hearing Aid Dispensers v. Long, supra. Absent some showing by plaintiff that the Legislature had intended to follow specific federal case law, see Helvering v. *633 Metropolitan Edison Co., supra, the rule adopted by the Director is not inconsistent with the enabling legislation.
Second, plaintiff and amicus assert that the Legislature in its adoption of § 4(k)(6)(D) implicitly adopted §§ 382 and 269 of the I.R.C. as these latter taxing statutes existed at the time § 4(k)(6)(D) was enacted. Inasmuch as the language employed by the Legislature in § 4(k)(6)(D) bears some similarity to §§ 382 and 269 of the I.R.C., plaintiff and amicus maintain that the Legislature must have had federal tax concepts in mind, and therefore, any analysis of the statute at issue should not be undertaken without a consideration of those concepts. This argument fares no better than plaintiff’s previous argument.
To begin with, as the Director correctly observes, the starting point for the determination of entire net income under the CBT act is taxable income, before net operating loss deduction and special deductions, which the taxpayer is required to report for federal income tax purposes. N.J.S.A. 54:10A-4(k). The act deviates from the federal tax by providing its own inclusions and exclusions from the tax base. Ibid. It is only at the initial point, that is, before net operating loss deduction, that the Legislature intended federal standards to be controlling. See Amerada Hess Corp. v. Director, Div. of Tax, 107 N.J. 307, 321-22, 526 A.2d 1029 (1987), aff'd, 490 U.S. 66, 109 S.Ct. 1617, 104 L.Ed.2d 58 (1989) (quoting with approval from Intern. Flavors & Fragrances v. Taxation Div. Dir., 5 N.J.Tax 617, 624 (Tax 1983), aff'd, 7 N.J.Tax 652 (App.Div.1984), aff'd, 102 N.J. 210, 507 A.2d 700 (1986)). If the Legislature wanted to adopt federal tax concepts it would have done so in clear terms. Amerada Hess Corp., 107 N.J. at 321, 526 A.2d 1029.
This was clearly recognized by our Supreme Court in the context of the Gross Income Tax Act in Smith v. Director, Div. of Taxation, 108 N.J. 19, 527 A.2d 843 (1987). The Court observed that:
[W]hen the Legislature intended to incorporate federal income tax concepts, it did so explicitly. For example, N.J.S.A. 54A:5-lb, provides that net profits *634 from business be determined in “accordance with the method of accounting allowed for federal [income] tax purposes.”
[at 33, 527 A.2d 843]
The language employed by the Legislature, while having some similarity to federal provisions, does not suggest that the Legislature intended to incorporate federal substantive rules relating to loss carryovers after corporate acquisitions.
Further support for this conclusion is found in the fact that the Legislature did not provide for loss carryovers with respect to corporate acquisitions or reorganizations as did Congress when it enacted § 381 of the I.R.C. To view this point in proper perspective some mention of the I.R. C. provisions with respect to loss carryovers is necessary.
To begin with, § 172 of the Code is the operative provision which permits a taxpayer to carry a loss back three years or forward 15 years from the year in which it occurs.[5] Although conferring greater tax benefits than §§ 4(k)(6)(A) and (B), § 172 operates somewhat in the same manner as does §§ 4(k)(6)(A) and (B), that is, it confers a tax benefit by permitting the loss carryover. Section 172, like §§ 4(k)(6)(A) and (B) of the CBT, is silent with respect to loss carrybacks or carryovers in mergers, consolidations or other corporate reorganizations.
Section 381 of the Code is the provision which sets forth the circumstances under which loss carryovers in mergers, consolidations or other corporate reorganizations will be permitted. This section allows loss carryovers in five specified types of corporate acquisitions or reorganizations. There is no counterpart to § 381 in the CBT act.
As part of its effort to prevent unwarranted tax avoidance through the carryover deduction, however, Congress enacted § 382 which places objective limitations upon the availability of *635 the loss carryovers which are permitted under § 381. For example, under subsection (a) of § 382, the deduction may not be permitted if there is a 50% change of corporate ownership followed by a change of business, a limitation somewhat similar to that found in § 4(k)(6)(D) of the CBT act.
In § 269 of the Code, Congress imposed an additional limitation upon the availability of corporate loss carryovers permitted under § 381. Section 269 permits the disallowance of a loss carryover in a corporate acquisition if the principal purpose of the acquisition is federal tax avoidance. This provision in § 269 is also somewhat similar to that found in § 4(k)(6)(D) of the CBT act.
Since the Legislature did not incorporate anything similar to § 381 in the CBT act relating to loss carryovers specifically in corporate acquisitions or reorganizations, one cannot conclude that the Legislature intended to permit loss carryovers in those circumstances.
Plaintiff and amicus point to the similarity of language in §§ 382 and 269 of the Code and the limiting provisions in § 4(k)(6)(D) and maintain that this similarity in language demonstrates that the Legislature intended to follow federal substantive tax rules with respect to loss carryovers in mergers or other corporate reorganizations.
The argument fails because there is no indication in the language of § 4(k)(6) or its history that in anyway demonstrates that the Legislature adopted § 381 of the Code. As a matter of fact, there is nothing in § 4(k)(6) of the CBT act which even remotely resembles either § 381 of the Code or any of the language employed in § 381. It is § 381 of the Code that permits loss carryovers in corporate reorganizations. Sections 382 and 269 do not grant or confer any tax benefits but instead place limitations on the benefits that are allowed in § 381. Section 381 is the operative provision which permits a loss carryover for surviving corporations in corporate acquisitions and reorganizations. Absent some indication that the Legisla *636 ture intended to incorporate § 381 in its enactment of § 4(k)(6), plaintiffs argument cannot prevail.
Plaintiff and amicus, however, assert that the language in § 4(k)(6)(D) implicitly authorizes net-operating-loss carryovers in merger situations. The argument first observes that § 4(k)(6)(D) precludes the use of loss carryovers in two situations:
[ 1] Where there is a change in 50% or more of the ownership of a corporation because of redemption or sale of stock and the corporation changes the trade or business giving rise to the loss ... [and] [2] where the facts support the premise that the corporation was acquired under any circumstances for the primary purpose of the use of its net operating loss carryover____
[N.J.S.A. 54:10A-4(k)(6)(D) ]
Looking at these situations, plaintiff and amicus maintain that § 4(k)(6)(D) permits loss carryovers in a merger situation unless the surviving corporation changes the trade or business giving rise to the loss or the primary purpose for which the corporation was acquired was for the use of its net-operating-loss carryovers. Their position is that a change in 50% or more of the ownership of a corporation either by redemption or sale of stock can be accomplished in a merger, and thus, unless one or both of the two previously stated limitations exists, the net-loss-operating carryover is statutorily permitted. Consequently, the argument proceeds, the Director’s regulation at N.J.A.C. 18:7-5.13(b) is invalid because it goes beyond the statute, since it expressly disallows what the statute implicitly allows.
The argument has superficial appeal but, upon close examination, loses its charm. To begin with, as has already been mentioned, § 4(k)(6)(D) is a limiting provision not a granting provision. That is, it seeks to limit that which has previously been permitted. The preceding provisions in § 4(k)(6)(A) and (B) simply permit net operating loss carryovers. As the Director points out that is limited to a single taxpaying entity unless the authorizing statute expressly and clearly extends the tax deduction to multiple corporations. It does not.
*637 Section § 4(k)(6)(D) is merely a limitation to the right of a net-operating-loss carryover by a single corporate entity. If there is a change in 50% or more of the ownership of a corporation and that same corporation changes the business giving rise to the loss, that corporation will lose its right to carryover its net operating losses. By the same token, if a corporation is acquired for the primary purpose of using its net operating loss carryovers, the Director may disallow the carryover.[6]
IV.

State Corporation Law.

Next, plaintiff argues that a provision in the New Jersey Business Corporation Act, N.J.S.A. 14A:1-1 et seq., provides the necessary support for its position. Plaintiff notes that N.J.S.A. 14A:10-6 provides, in pertinent part, that
when a merger or consolidation has become effective:
(C) Such surviving or new corporation shall ... possess all the rights, privileges, powers, immunities, purposes and franchises ... of each of the merging or consolidating corporations.
Plaintiff maintains that the “rights, privileges, powers” set forth in N.J.S.A. 14A:10-6 includes the loss carryovers which it seeks to deduct, and therefore, as the surviving corporation in the merger, it was entitled to take the deduction for the losses incurred by the merged corporation.
In response, the Director asserts that there is no basis for construing the CBT act in pari materia with the New Jersey Corporation Business Act, specifically N.J.S.A. 14A:10-6. The Director asserts that the two acts deal with different subjects *638 (corporate law and tax law), have different purposes and are clearly not part of a single comprehensive plan.
Plaintiff maintains that the Director’s notion of the doctrine of in pari materia is overly narrow and unreasonable and asks this court to construe the CBT act in light of the business corporation act. “Statutes are considered to be in pari materia when they relate to the same person or thing, to the same class of persons or things, or have the same purpose or object.” 2B Sutherland, Statutory Construction (5th ed. 1992), § 51.03 at 138.
Inasmuch as the New Jersey Business Corporation Act and the Corporation Business Tax Act deal with different subjects and have different purposes, there is no basis for treating the two enactments in pari materia. The design of the business corporation act was “to simplify, clarify and modernize the law governing corporations,” see N.J.S.A. 14A:l-l(3)(a), while the evident purpose of the CBT act was to impose a privilege tax upon certain corporations in order to raise revenue for the State. See Report of the New Jersey Tax Policy Committee, supra.
This conclusion finds support in Intern. Flavors & Fragrances, Inc. v. Taxation Div. Director, 5 N.J.Tax 617 (Tax 1983), aff'd, 7 N.J.Tax 652 (App.Div.1984), aff'd, 102 N.J. 210, 219 n. 5, 507 A.2d 700 (1986). In that case the Director asked the Tax Court to determine legislative intent by comparing the definition of “subsidiary” in the business corporation act at N.J.S.A. 14A:1-2(r) with its use in the CBT act with respect specifically to N.J.S.A. 54:10A-4(k) and -4(d). 5 N.J.Tax at 626.[7] This court concluded that the two enactments could not be read in pari materia. Ibid. Our Supreme Court affirmed this decision and added: “We agree with the Tax Court that the *639 Business Corporation Act’s language cannot sensibly be used to give meaning to the language of the Corporation Tax Act.” 102 N.J. at 219 n. 5, 507 A.2d 700. See also Newark Bldg. Assocs. v. Dir., Div. of Taxation, 128 N.J.Super. 535, 539-40, 320 A.2d 867 (App.Div.1974) (Unincorporated Business Tax Act, N.J.S.A. 54:11B-1 et seq. and the Partnership Act, N.J.S.A. 42:1-1 et seq. are not in pari materia, nor are they statutes on cognate subjects).
Plaintiff has offered nothing which indicates that when the Legislature enacted § 4(k)(6) of the CBT act it had the business corporation act in mind or was influenced by that act in its adoption of § 4(k)(6).
When confronted with the same issue, the Supreme Court of Wisconsin held that Wisconsin’s merger statute, which transferred to the surviving corporation of a merger “the estate, property rights, privileges and franchises” of the merged corporation, did not include tax attributes in the form of loss carryovers. Fall River Canning Co. v. Wisconsin Dept. of Taxation, 3 Wis.2d 632, 89 N.W.2d 203, 205 (1958). See also Wisconsin Depart. of Revenue v. United States Shoe Corp., 158 Wis.2d 123, 462 N.W.2d 233 (Wis.App.Ct.1990) (still supporting the Fall River Canning Co. analysis after change in statute).
In holding that a general grant of privileges is insufficient to transfer a statutory tax deduction, the Wisconsin court noted that a specific and unambiguous provision would be required to accomplish that result. 89 N.W.2d at 205. The court concluded its opinion by observing that tax exemptions or deductions are matters of legislative grace and, as such, one who claims an exemption must point to an express provision granting such an exemption in clear terms. Id. at 206; see also Golf Digest/Tennis, Inc. v. Dubno, 203 Conn. 455, 525 A.2d 106, 111 (1987). This principle of statutory construction is equally applicable in this State. See Board of National Missions v. Neeld, 9 N.J. 349, 353, 88 A.2d 500 (1952); Container Ring Co. v. Director, *640 Div. of Taxation, 1 N.J.Tax 203, 208 (Tax 1980), aff'd o.b. per curiam, 4 N.J.Tax 527 (App.Div.1981).
V.

Retroactivity of Regulation.

Plaintiff argues that, if this court sustains the validity of the Director’s regulation, it should only be applied prospectively from its effective date; February 3, 1986. Plaintiff maintains that those losses predating the effective date of the regulation can then be carried over by plaintiff despite the validity of the regulation.
In response, the Director contends that the effective date of the regulation is irrelevant because the regulation is merely the Director’s interpretation of the statutory provision at issue. As such, the regulation, as an appropriate interpretation of the statute, applies as the statute directs, to “any taxable year ending after June 30, 1984.” I agree with the Director’s position.
Plaintiff’s argument presupposes that the Director’s regulation can change the statutory law, and therefore, what was permissible prior to February 3, 1986, the effective date of the regulation, is not allowable after that date. Absent a specific direction by the Legislature to the Director in that regard, the Director’s regulation cannot alter the statutory provision.[8] If the regulation is a valid interpretation of the statute it is effective when the statute is effective.[9] As the United States *641 Supreme Court observed in Manhattan Gen’l Equipment Co. v. Commissioner of Internal Revenue, 297 U.S. 129, 56 S.Ct. 397, 80 L.Ed. 528, reh’g denied, 297 U.S. 728, 56 S.Ct. 587, 80 L.Ed. 1010 (1936), an administrative regulation “does not, and could not, alter the statute. It is no more retroactive in its operation than is a judicial determination construing and applying a statute to a case at hand.” 297 U.S. at 135, 56 S.Ct. at 400, 80 L.Ed. at 532.
In any event, even if the regulation were not given retrospective application, plaintiff still cannot prevail on this point simply because the authorizing legislation in § 4(k)(6) does not expressly allow the deduction plaintiff seeks.[10]
VI.
One last point requires brief mention. Plaintiff asserted that the Director’s regulation is irrational because it permits the loss carryover if the corporation sustaining the loss is the surviyor of a merger, but denies it when the entity sustaining the loss is not the survivor of a merger. The fact of the matter is that the Director’s position is completely rational and consistent. The regulation permits the loss carryover by the corporation that sustained the loss. “A merger of two corporations contemplates that one will be absorbed by the other and go out of *642 existence, but the absorbing corporation will remain.” Applestein v. United Board & Carton Corp., 60 N.J.Super. 333, 342, 159 A.2d 146 (Ch.Div.1960), aff'd o.b. per curiam, 33 N.J. 72, 161 A.2d 474 (1960). If the survivor corporation sustained the loss prior to the merger, there is no reason to deny it the loss carryover after the merger because the survivor is the same corporation that sustained the loss.
In light of the foregoing, the Director’s motion for summary judgment is granted. Plaintiff’s motion is denied. Judgment will be entered affirming the determination of the Director of the Division of Taxation.

 The Director has waived the penalty and abated the interest to the statutory minimum. See N.J.S.A. 54:49-11.

 Originally, the CBT act was based on a corporation’s net worth. The act was amended in 1958 to include entire net income as an additional tax base. L. 1958, c. 63. The act was again amended in 1982 to phase out the net worth base. L. 1982, c. 55.

 Plaintiff points out the inequity of this situation and asserts that Richard's Auto City, Inc. could have been merged into Richard Catena, Inc. Then, Richard Catena, Inc. could have assumed the name of Richard’s Auto City, Inc. by filing a certificate of registration of a fictitious name with the Secretary of State. See N.J.S.A. 14A:2-2. Thus, plaintiff could have complied with the Director’s regulation and the deduction would have been allowed. The short response to this observation is that “a voluntary business decision is to be given its tax effect in accord with what actually occurred and not in accord with what might have occurred." General Trading Co. v. Taxation Div. Director, 83 N.J. 122, 136, 416 A.2d 37 (1980).

 In Helvering v. Metropolitan Edison Co., the United States Supreme Court permitted a federal tax deduction for unamortized bond discount and expense after a reorganization which the Court held to be a valid merger under Pennsylvania law. With respect, however, specifically to the deductibility of loss carryovers, see New Colonial Ice Co. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348 (1934) (the loss carryover is not available unless the corporation claiming it is the same taxable entity as that which sustained the loss) and Libson Shops, Inc. v. Koehler, 353 U.S. 382, 77 S.Ct. 990, 1 L.Ed.2d 924, reh’g denied, 354 U.S. 943, 77 S.Ct. 1390, 1 L.Ed.2d 1542 (1957) (loss carryover not permitted after merger unless the income against which the deduction is claimed was produced by substantially the same business which incurred the loss).

 Other indications that the Legislature did not intend to follow federal substantive tax rules are that there is no provision for a loss carryback in the CBT act, and the CBT loss carryforward is limited to seven years.

 For example, if an individual about to start a new business acquires a corporate shell that has a large amount of net loss carryovers solely to utilize those net loss carryovers as opposed to forming a new corporation, the Director may disallow the loss carryover.

 In addition to the fact that the two statutes do not relate to the same subject matter, plaintiff, in Intern. Flavors & Fragrances, Inc., noted that different parties were responsible for drafting the two acts. The New Jersey Business Corporation Act was drafted by the New Jersey Corporation Law Revision Commission rather than by the Legislature. Ibid.

 The regulation at issue is not a legislative regulation, i.e., an exercise of legislative power by the Director in accordance with a delegation of such power by the Legislature, as was the case in Metromedia v. Director, Div. of Taxation, 97 N.J. 313, 334, 478 A.2d 742 (1984). This is an interpretative regulation which construes the authorizing legislation.

 The regulation in question is merely an interpretation of a previously-existing statute. If the regulation expresses the true meaning of the statute, as I have held that it does, then that is what the statute has always meant and the law has not been changed retroactively. By the same token, if the regulation did not express the meaning of the statute then it is invalid because it is *641 inconsistent with the statute. The regulation at issue is interpretative and not creative. It interprets pre-existing statutory law and does not create something new. If the latter were true then perhaps retroactive effects would have to be considered.

 The Director could not have issued a regulation consistent with plaintiffs position and have been faithful to the statute itself. It is interesting to note that in the comments received by the Director, relative to the proposed adoption of the regulation at issue, there was a suggestion that the then proposed regulation be modified to permit the carryover of losses from one corporate franchise to another. The Director responded that § 4k of the CBT act defines entire net income in terms of a single corporate entity and that without explicit statutory authority allowing the carryover of losses to other corporations, as is contained in the Internal Revenue Code, such a change in the proposed regulation could not be made. See Summary of Public Comments and Agency Responses, 18 N.J.R. 309.